IHS CEDARS TREATMENT CENTER OF DeSOTO, TEXAS, INC., The Cedars Mental Health Center Innovative Healthcare Systems, Inc., Teofilo Moses V. Ramos, Jr., M.D., and Sandra J. Duryea Marx, R.N., Petitioners,

v.

Jodi Marie MASON, Individually and as Next Friend of Ashley Ladon Mansfield, a Minor, and as Next Friend of Courtney Marie Mason, a Minor, and Karen Rudd, Respondents.

No. 01–0926.

Supreme Court of Texas.

Argued Sept. 3, 2003.

Decided June 18, 2004.

Rehearing Denied Sept. 24, 2004.

Andrew A. Bergman, Bergman Yonks & Stein, Dallas, Michael Lawrence Cronig, Austin, for Party In Interest.

Wendy Ann McMillon, Cowles & Thompson, Dallas, for other interested party.

Darrell G–M Noga, Roberts & Smaby, PC, Michelle E. Robberson, Cooper & Scully, P.C., Matthew Roy Scott, Bell Nunnally & Martin LLP, Sidney L. Murphy, Law Office of Joel J. Steed, Dallas, Michael C. Freden, Hall & Freden, Fort Worth, David C. McCue, Lawson Fields McCue Lee & Campbell, Addison, and Ste-

phanie S. Bascon, Reagan Burrus Dierksen Lamon & Blutzer, PLLC, New Braunfels, Andrea M. Kuntzman, Gregory J. Lensing, Alan L. Campbell, and Charles T. Frazier Jr., Cowles & Thompson, P.C., Kevin E. Oliver, Cooper & Scully, Dallas, for Petitioner.

Tony D. Crabtree, Randall R. Moore, Hyatt Crabtree & Moore, Charles W. McGarry, Law Office of Charles McGarry, Dallas, Steven J. Williams, Steven J. Williams, P.C.,Irving,for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court.

In this case, we again consider the limits of the causal nexus between conduct and harm that is necessary to support liability in tort.

Jodi Marie Mason voluntarily entered a mental health care facility seeking treatment for depression. Three weeks later, Mason's physician discharged her at her request. A little over a day after Mason's discharge, she was severely injured while a passenger in a single-car accident. Mason's roommate at the facility, the driver of the car, was discharged by a different physician at the same time as Mason. Mason sued her physician, her roommate's physician, the charge nurse, and the mental health care facility. Assuming that the defendants owed Mason a duty to prevent her injuries under these circumstances, we conclude that Mason's injuries are too remote from the conduct of her medical caregivers to be the proximate cause of her injuries. Accordingly, we reverse the court of appeals' judgment in part and render judgment in favor of Mason's physician, the charge nurse, and the mental health care facility.

## I.  Factual and Procedural Background

Mason voluntarily admitted herself to the Minirth–Meier Unit of Cedars Hospital on July 26, 1993 and remained a patient there until her discharge on August 16, 1993. Her scheduled release date was August 20, 1993. At the time of her admission, Mason suffered from depression. She was placed on suicide precautions and close observation. On July 27, Dr. Teofilo Moses Ramos, a staff psychiatrist at Cedars Hospital, examined Mason. During the examination, Mason expressed a desire to participate in treatment and entered into a personal contract with Ramos not to cause harm to herself. After the exam, Ramos discontinued close observation and suicide precautions for Mason.

During her stay at the hospital, Mason's roommate was Cynthia Thomas. Mason described Thomas as manipulative and controlling. Mason's hospital records reflect that she told a staff member that Thomas wrought fear in her. She reported to the staff, "I feel she's the devil and looking into my soul." Notwithstanding Mason's impression of Thomas, they became friends during an outing to a local shopping mall.

On the evening of August 16, Thomas approached Nurse Sandra Duryea Marx, the supervising charge nurse on duty, to request that both she and Mason be discharged. Neither Mason nor Thomas was scheduled to be discharged that day. Marx informed Thomas's physician, Dr. Paul Meier, of the request for discharge and, after taking the order from Meier, discharged Thomas. No action was taken on Thomas's request for Mason to be discharged. Mason made her own request to Marx for an early discharge. Marx talked to Mason about continuing treatment, asked Mason why she wanted to leave, and assessed Mason's physical and mental condition by observing her behavior and mannerisms. She asked Mason what she planned to do after discharge, and Mason said that she intended to spend some time

relaxing with Thomas. Marx then notified Ramos by telephone of Mason's desire to leave. Marx stated that she told him that Mason intended to spend time with Thomas after discharge. Pursuant to Ramos's order, Marx discharged Mason, who left the hospital in the company of Thomas. Both of them were met at the hospital by members of Thomas's family, but no one in Mason's family was informed of her discharge. Mason's diagnosis on discharge was the same as admission; she suffered from depression. Marx noted that Mason made "[l]imited success in attaining [Mason's] discharge goals."

Twenty-eight hours later, Mason was involved in a single-car accident with Thomas and Richard Cleveland, another patient at Cedars Hospital. While driving her Corvette at a very high speed, Thomas flew into an angry rage. Mason's expert witness, Dr. Stephen Kramer, opined that "Thomas experienced a psychotic episode." In the midst of this episode, Thomas swerved to miss a dog in the road and lost control of the vehicle. The Corvette flipped more than once, Cleveland was killed, and Mason was left paralyzed. Thomas also sustained injuries in the accident.

Mason, individually and as next friend of Ashley Ladon Mansfield, a minor, and as next friend of Courtney Marie Mason, a minor, and Karen Rudd brought suit against Ramos, Marx, Meier, Cedars Hospital, and the Minirth–Meier Clinic. Mason did not sue Thomas. Mason claimed that Ramos was negligent for failing to provide her with adequate care and treatment, for negligent discharge, and for failing to initiate involuntary commitment proceedings against her when she asked to leave. Mason alleged that Marx was negligent for failing to provide adequate care and treatment, for failing to adequately assess her mental condition for discharge,

for failing to report an inappropriate discharge order on the part of Ramos to her superiors, and for failing to act as an advocate for Mason's welfare. Mason also brought a claim against Meier, Thomas's attending physician and head of the Minirth–Meier Clinic, for negligent discharge, for negligently failing to promulgate adequate policies and procedures and follow existing hospital policies and procedures, for failing to provide adequate care and treatment for Mason, for failing to insure the competency of and adequately train physicians and nurses, and for failing to warn Mason of the danger posed by Thomas. Mason asserted identical claims against Cedars Hospital and the Minirth–Meier Clinic as against Meier and additional claims for failing to adequately train nurses, for negligently granting staff privileges to Ramos, for failing to evaluate the competency of Ramos, Meier, and Marx, and for failing to initiate commitment proceedings against Mason. She also claimed that the hospital and clinic were liable for the acts and omissions of Ramos and Marx under theories of respondeat superior, agency, ostensible agency, and agency by estoppel.

After the trial court granted summary judgment in favor of Ramos, Mason amended her petition to include a claim for breach of contract against the hospital and the Minirth–Meier Clinic for failing to provide her with adequate care and treatment, where Mason claimed to be a third-party beneficiary of the contract between Cedars Hospital and the Minirth–Meier Clinic, and for violations of various Texas statutes not at issue in this appeal. The trial court granted summary judgment in favor of the remaining parties and issued a final order disposing of all causes of action on the ground that defendants' negligence, if any, was not the proximate cause of Mason's injuries. Mason appealed, and a divided court of appeals reversed the sum-

mary judgment in favor of Ramos, Marx, Cedars Hospital, and the Minirth–Meier Clinic and remanded the claims back to the trial court for further proceedings. 2001 WL 915215. The dissenting justice opined that the defendants' conduct fell short of satisfying the substantial factor test for proximate cause. *Id.* The court of appeals affirmed the summary judgment in favor of Meier for Mason's negligent treatment and discharge claims and reversed summary judgment and remanded Mason's claims based on respondeat superior and Meier's failure to develop adequate policies and procedures for the Clinic. *Id.* Mason did not appeal the summary judgment granted on her claims against Cedars Hospital and the Minirth–Meier Clinic for negligently granting privileges to Ramos and for breach of contract. Ramos, Marx, Cedars Hospital, and the Minirth–Meier Clinic petitioned this Court for review. Neither Mason nor Meier appealed the decision of the court of appeals. At the parties' joint request, this Court severed the Minirth–Meier Clinic from this case and remanded the claims against it to the trial court for further proceedings consistent with the parties' settlement.[1]

We now consider the trial court's grant of summary judgment dismissing Mason's claims against Ramos, Marx, and Cedars Hospital.

## II.  Standard of Review

██ A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002) (citing *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999)). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996)).

## III.  Causation

Mason claims that the breach of certain duties allegedly owed to her by Ramos, Marx, and Cedars Hospital proximately caused the injuries she suffered in the August 18 car accident. Mason asserts that Ramos breached a duty to exercise reasonable care in treating and discharging her and failing to protect her from harm by Thomas after they both were discharged from the hospital. Mason also claims that Marx breached a duty to exercise reasonable care in assessing Mason's mental condition for discharge and failing to tell Ramos about Mason's request for simultaneous discharge with Thomas and that Cedars Hospital breached its duty to provide adequate policies and procedures for voluntary discharges. Assuming without deciding that Ramos, Marx, and Cedars Hospital owed and breached these duties, we consider whether such breaches proximately caused Mason's injuries.

██ The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability. *Id.; Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). These elements cannot be satisfied

---

1. The petitions for review in this case were granted on motion for rehearing. We issued an abatement order on December 31, 2002, due to the bankruptcy of the Minirth–Meier Clinic's insurer. On May 22, 2003, we lifted the abatement on the parties' motion.

by mere conjecture, guess, or speculation. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Id.; Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Travis*, 830 S.W.2d at 98. In *Lear Siegler, Inc. v. Perez*, we found the Restatement (Second) of Torts to be instructive on this point:

> In order to be [the proximate cause] of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent.... [T]his is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.

819 S.W.2d 470, 472 (Tex.1991) (quoting RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965)). Accordingly, cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible. *Boys Clubs*, 907 S.W.2d at 477 (citing *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968)). In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *Boys Clubs*, 907 S.W.2d at 477; *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472.

On several occasions, we have addressed attenuation of the causal connection between conduct and liability. *See, e.g., Union Pump*, 898 S.W.2d 773; *Lear Siegler*, 819 S.W.2d 470; *Bell*, 434 S.W.2d 117. In *Bell*, three individuals were hit by a car while removing debris from an earlier car accident. 434 S.W.2d at 118. Two of the men were killed, and the third suffered serious injuries. *Id.* We held that the initial accident was not the proximate cause of the deaths and injuries because it only created the condition that attracted the three men to the scene and did not actively contribute to the injuries resulting from the second accident. *Id.* at 122. Where the initial act of negligence was not the active and efficient cause of plaintiffs' injuries, but merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries. *See id.*

In *Lear Siegler*, Rafael Perez, while working for the Texas Highway Department, pulled a flashing arrow sign behind a sweeping operation to warn drivers about ongoing highway maintenance. *Id.* at 471. Perez stopped his truck when the sign malfunctioned, and a van driven by Alfonso Lerma, who had fallen asleep at the wheel, struck the sign which in turn struck Perez, causing severe injuries from which Perez later died. *Id.* The legal representatives of Perez's estate claimed that Lear Siegler manufactured a defective sign which proximately caused Perez's injuries. *Id.* We determined that, as a matter of law, the circumstances of the accident were too remotely connected with Lear Siegler's conduct to constitute the proximate cause of Perez's death. *Id.* at 472. While acknowledging that a defendant's negligence may expose another to an increased risk of harm by placing him in a particular place at a given time, we recognized that the "happenstance of place and time" may be too attenuated for liability to be imposed under the common law. *Id.*

In *Union Pump*, a pump caught fire at a Texaco Chemical Company facility. 898 S.W.2d at 774. Sue Allbritton, an employee of Texaco, assisted in extinguishing the fire. *Id.* Two hours after the fire was abated, Allbritton and a fellow employee went to block a nitrogen purge

valve at the request of their employers. *Id.* Upon reaching the valve, they were informed that it was not necessary to block the valve. *Id.* As the two of them returned from the purge valve, they walked over a pipe rack, which was still wet from the efforts to extinguish the fire, and Albritton fell and was injured. *Id.* She alleged that Union Pump caused her injuries by manufacturing a defective pump which caused the fire, which in turn led to the pipe rack being wet and slippery, and ultimately caused her injuries.. *Id.* We held that the circumstances surrounding her injuries were too remotely connected with the defective pump to constitute the cause in fact of her injuries. *Id.* at 776. The pump, by causing a fire, did no more than create the condition which made the plaintiff's injuries possible. *Id.* Our precedents establish that merely creating the condition that makes harm possible falls short as a matter of law of satisfying the substantial factor test.

### A. Ramos

Mason argues that Ramos's negligent care, treatment, and discharge proximately caused her injuries in the car accident with Thomas some twenty-eight hours after Mason's discharge. Mason argues that had she been discharged on August 20, as scheduled, instead of August 16, she would not have been in the car on August 18, and thus, would have missed the accident by two days. Mason also claims that had Ramos insisted on ninety-six hours written notice before discharging her, as she had agreed in her admission form, or advised her to remain in treatment, she would not have been in Thomas's car when it crashed.

Mason's contentions are analogous to the issues raised by the vehicular accidents in *Lear Siegler,* 819 S.W.2d 470 and *Bell,* 434 S.W.2d 117. In both cases, had the

initial act of negligence not occurred, in *Lear Siegler,* the malfunctioning sign, and in *Bell,* the first automobile accident, the plaintiffs would not have been at the particular place at the time to be struck and injured by separate vehicles. *Lear Siegler,* 819 S.W.2d at 471; *Bell,* 434 S.W.2d at 118. Similarly, we conclude that Ramos's negligence, if any, provided Mason with the opportunity to leave the hospital and spend time with Thomas. It is a bit philosophical, however, to argue that the negligent discharge *caused* Mason to be injured in Thomas's car wreck twenty-eight hours later. There is an association between the two acts, but it is beyond the limitations established by our precedents to contend that Ramos's conduct caused Mason's injuries at the hands of a psychotic, speeding driver whose course was interdicted by the unfortunate appearance of a dog in the road. Often, as in this case, the causal link between conduct and injury will be too remote to be legally significant when two separate and sequential tortious incidents join to lead to the injury. The harm to Mason in this case is too attenuated from Ramos's conduct to constitute the cause in fact of her injuries.

Mason also argues that her mental condition, left uncorrected by Ramos's negligent care and treatment, was the proximate cause of her injuries because it caused her to be in the car with Thomas at the time of the accident. Mason alleges that throughout her stay she displayed recurrent signs of depression. At one point, she told Ramos that if she were not in treatment, she would be "drunk" and "would not care if anyone hurt [her]." During treatment, Mason also expressed a fear that she would be unable to find emotional support outside of the hospital environment. However, there is no evidence that Mason's mental condition played any role in the accident that injured her. Nor is there any assertion that Thomas threat-

ened to physically harm Mason. It is clear, however, that Thomas's speeding and psychotic episode and swerving the car to miss the dog in the road caused Mason's injuries, not negligent treatment or negligent discharge. Mason's position would result in a determination that any injury to her within a few days after discharge at the hands of a third party was proximately caused by Ramos. Ramos had a duty of reasonable care in treating Mason, but he did not become an insurer of Mason's post-discharge well-being for any dangerous circumstance in which she may place herself, notwithstanding the acts of other parties.

Mason also asserts that Ramos knew or should have known that Thomas was controlling Mason and that it would have been a breach of duty to discharge Mason from the hospital with another patient. Mason points out that the evidence supports these assertions. Ramos admits that, in his opinion, "[i]t would not be appropriate for any peer [from the hospital] to accompany [Mason] outside the hospital." Although Ramos disputes it, we credit for purposes of this summary judgment Marx's deposition testimony that she told Ramos that Mason was planning on spending time with Thomas after Mason's discharge. Additionally, notations in Mason's chart indicated that she feared Thomas. These facts allegedly created a duty on Ramos to take reasonable actions to prevent Mason's injuries arising from her post-discharge conduct and to protect Mason from harm caused by the post-discharge actions of her roommate, Thomas.

■ These facts may raise issues of Ramos's duty to protect Mason after her discharge and the possible breach of that duty, however, Mason makes no argument that Ramos caused Thomas to experience a psychotic episode, drive wildly, or crash the Corvette. Hence, her argument turns

on the assertion that discharging Mason on Wednesday evening allowed her to be in Thomas's car on Friday morning, thereby creating a circumstance that led to Mason's injuries. As we have held consistently, merely creating the condition in which an accident occurs does not satisfy proximate cause as a matter of law. *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472; *Bell*, 434 S.W.2d at 122. Thus, even if Ramos had a duty to act to protect Mason after her discharge, an issue we do not decide, her claims fall short of proximate cause as a matter of law.

### B. Marx

■ Mason argues that Marx's negligent care, treatment, and assessment of her mental condition for discharge proximately caused her injuries. In addition, Mason asserts that her injuries arose from Marx's failure to tell Ramos about Mason's request to be simultaneously discharged with Thomas. Marx was the charge nurse with supervisory authority on duty on the evening of August 16 when Mason and Thomas requested unscheduled discharges. She contacted Meier, Thomas's attending physician, and processed his order to discharge Thomas from the facility without telling him that she was being discharged with another patient. After Mason made her discharge request, but before Marx contacted Ramos, Marx inquired why Mason wanted to leave the hospital, asked what Mason and Thomas planned to do together after leaving the hospital, and made an assessment of Mason's physical and mental condition based on her own observations during the course of their brief conversation. She did not review Mason's chart. Marx then called Ramos to tell him that Mason wanted to be discharged. Marx knew that Mason and Thomas had bonded, and that their

relationship hindered their respective treatments. In her deposition, Marx says that it was her "personal preference" that Mason not be discharged. She did not make this known to Ramos or tell him that the two patients were being discharged together. Following Ramos's instructions, Marx discharged Mason, and she left the hospital with Thomas.

Ramos testified, in his deposition, that he expected Marx to provide him with all of the information she gathered regarding the circumstances surrounding Mason's request for an early discharge including in whose care she would be entrusted after leaving the hospital. He provided testimony that "[i]t would not be appropriate for any peer to accompany [Mason] outside of the hospital." Ramos elaborated that, had he known Mason was leaving with Thomas, he would have taken action to discourage her from leaving the facility. He also stated that there were measures he could have taken short of initiating involuntary commitment proceedings to keep Mason in the hospital. However, Marx only told him that Mason intended to spend time with Thomas after discharge.

Just as Ramos's negligence, if any, merely allowed Mason to be in Thomas's car at the time of the accident, Marx's conduct also did not proximately cause Mason's injuries for the same reasons discussed above. We therefore hold that neither Marx's failure to fully inform Ramos of the facts of Mason's simultaneous discharge with Thomas nor an improper discharge assessment were the cause in fact of Mason's injuries. Marx's actions were necessary but not sufficient to cause Mason's injuries.

## C. Cedars Hospital

Mason argues that the failure of Cedars Hospital to provide adequate policies and procedures governing the processing by hospital staff of an unscheduled discharge by a voluntary patient prevented Mason from receiving a proper nursing assessment of her mental condition and her physician from being informed of her plans to leave with another patient. Accordingly, Mason argues that the hospital's inadequate policies and procedures proximately caused her injuries. Assuming that the hospital had policies and procedures in place that required Marx to review Mason's chart and inform Ramos that Mason planned to leave the facility with another patient, it would only have meant, in the most optimistic scenario, that Mason would not have been in Thomas's car at the time of the accident. Hospital policies and procedures governing Mason's discharge had nothing to do with the events that contributed to harm Mason—i.e., Thomas suffering a psychotic episode and flipping her car after swerving to miss a dog in the road while driving at a high rate of speed. There is no allegation that Mason's mental condition was a substantial factor in the accident. Cedars Hospital's failure, if any, to provide adequate policies and procedures for discharging Mason was not the cause in fact of her injuries as a matter of law. Just as Ramos's and Marx's conduct was too attenuated from the accident to be the cause in fact of Mason's injuries, the conduct of Cedars Hospital is also too attenuated to have caused the accident. Mason also claims that Cedars Hospital is vicariously liable because Mason's injuries were the result of alleged negligent acts and omissions by Ramos in his capacity as a physician with staff privileges at the hospital and Marx in her capacity as an employee of the hospital. Because we conclude that any breach of duty by Ramos and Marx did not proximately cause Mason's injuries, Cedars Hospital is not vicariously liable.

### D. Expert Testimony

Mason also argues that where competent expert testimony is presented establishing proximate cause in a medical malpractice action, a court cannot negate any of the elements as a matter of law. As part of Mason's attempt to create a fact issue, she presents expert opinions that she argues rebut the claim that there is no evidence of causation. Dr. Stephen Kramer, Mason's expert on the liability of Ramos, Marx, and Cedars Hospital, fails to link the alleged negligence of Ramos, Marx, and Cedars Hospital to the accident to establish that their conduct was the cause in fact of Mason's injuries. We have said that the conduct of the defendants is so attenuated from the harm to Mason that it cannot be the cause in fact of her injuries. The conduct only created the condition which made the injury possible. *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472; *Bell*, 434 S.W.2d at 120. Kramer's opinion on causation mirrors the language from this Court's opinions on attenuation. In separate affidavits for Ramos and for Marx and Cedars Hospital, he asserts, "In my opinion, Jodi Mason was likely to place herself in a position to cause serious harm to herself. . . ." Just as Mason's evidence, taken in its most favorable light, fails to establish that the conduct of Ramos, Marx, and Cedars Hospital proximately caused Mason's injuries from the car accident, Kramer's testimony does no more than support Mason's contention that Ramos, Marx, and Cedars Hospital created the condition that caused her injuries. This falls short of being evidence of proximate cause.

The testimony of Celia J. Wintz, Mason's expert on the liability of Marx and Cedars Hospital, also fails to create a fact issue on causation. This Court has held that "[a] conclusory statement [in an affidavit] of an expert witness is insufficient to create a question of fact to defeat summary judgment." *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003); *see also Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231 (Tex.2004); *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984). In the instant case, Wintz opines that the alleged negligent conduct of Marx and Cedars Hospital proximately caused Mason's injuries without an explanation of how the conduct of Marx and the hospital was the cause in fact of Mason's injuries. Wintz merely states in her affidavit that, in her opinion, the breaches of the standard of care alleged against Marx and Cedars Hospital "constitute negligence that was a proximate cause of the occurrence and injuries suffered by Jodi Mason on August 18, 1993." Wintz's statements fail to provide a sufficient causal nexus between the duties and breaches on the part of Marx and Cedars Hospital and the injuries suffered by Mason. Accordingly, we conclude that Mason presents no evidence of causation.

### IV. Conclusion

The trial court correctly held that the negligence alleged against Ramos, Marx, and Cedars Hospital was not the proximate cause of Mason's injuries as a matter of law. We reverse the judgment of the court of appeals as to Ramos, Marx, and Cedars Hospital and render judgment that Mason take nothing.