IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00026-CV

 

Providence Health Center 

a/k/a Daughters of Charity 

Health Services of Waco; AND

DePaul Center a/k/a Daughters

of Charity Health Services of Waco,

                                                                      Appellants

 v.

 

Jimmy and Carolyn Dowell, 

Individually and on behalf

of the Estate of 

Jonathan Lance Dowell, Deceased,

                                                                      Appellees

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court # 99-2717-4

 



MEMORANDUM 
Opinion










 

This is an appeal from an adverse judgment in a medical malpractice case.  Because we find no error, we will affirm the
judgment.








                                                    THE
EVENTS

Early on a Saturday, twenty-one-year-old Lance Dowell was taken by
Freestone County Sheriff=s Deputies to
Providence Health Center in Waco (Providence) because he had self-inflicted wounds
and was talking about committing suicide. 
He was seen at the emergency room by Dr. James C. Pettit, who requested
a psychological assessment from the DePaul Center (DePaul),
which is affiliated with Providence.  Sister Mary Theresa Fox, a
joint employee of Providence and DePaul, evaluated Lance=s condition and
determined that he was not Aactively suicidal.@  Dr. Pettit reached the same
conclusion.  Lance was discharged from
the hospital, accompanied by his mother, Carolyn Dowell (Carolyn).

During that same day, Lance went to his mother=s home in Waco and bathed, went to Lake Limestone, went to Fairfield with his brother Larry
to a rodeo, and visited with friends.  On
Sunday he and Larry attended a family reunion and made plans to meet at a party
that night.  On Sunday evening, Lance
hung himself.

                                                       THE
SUIT








Lance=s parents, Carolyn and Jimmy Dowell (hereinafter collectively referred
to as Athe Dowells@) sued Providence, DePaul, and Dr.
Pettit under the Texas Wrongful Death Act and the Survival Statute, asserting a
claim of medical negligence and a claim under the federal Aanti-dumping@ statute.  A jury found that Lance suffered personal
harm as a direct result of the failure to provide an appropriate psychiatric
screening evaluation.  After finding that
the negligence of all three defendants proximately caused the injury in
question, the jury apportioned the negligence 20% to Dr. Pettit, 40% to Providence, and 40% to
DePaul.  Damages were assessed as
follows: $100,000 each to the Dowells for past mental anguish and loss of society
and companionship; $100,000 each for the same elements in the future; and
$400,000 for pain, mental anguish, and funeral and burial expenses as
compensation for Lance.  The court
entered a judgment accordingly.  Dr.
Pettit filed a notice of appeal, which we docketed under cause number
10-01-420-CV.  Providence and DePaul also filed
a notice of appeal, which we docketed under cause number 10-02-026-CV.  The causes were submitted on the same day,
and the opinion in the former cause number is being issued contemporaneously
herewith.

                                           ISSUES
IN THIS APPEAL

Providence and DePaul (hereafter collectively called Providence) assert
in five issues: (1) the evidence does not show a sufficient causal connection
to hold either of them liable for Lance=s suicide; (2) the
court erred in failing to ask the jury whether the Dowells= negligence in failing to follow the instructions that were given when
Lance left the hospital was a proximate cause of his death; (3) because the
evidence shows that Lance had a child, the court erred in failing to require
the Dowells to join that child as a party; (4) because no personal
representative of Lance=s estate had been
appointed, the Dowells had no standing to bring a claim under the survival
statute; and (5) no evidence exists to support an award of damages for pain and
mental anguish to Lance=s estate.

We will address the issues in this same order. 

                                           STANDARD
OF REVIEW

We begin by considering the traditional no-evidence review standards,
then add the requirements peculiar to medical negligence cases.  We note at this point, however, that Providence relies on other
pronouncements by the Texas Supreme Court in connection with its attack on
causation.  We will discuss those
decisions in due course.




traditional review standards








We review no-evidence points by considering only the evidence and all
reasonable inferences that support the jury=s finding while disregarding all evidence and inferences to the
contrary.  Orozco v. Sander, 824
S.W.2d 555, 556 (Tex. 1992).  If there is more than a
scintilla of evidence to support the finding, the no-evidence challenge must
fail.  Id.  If the evidence is so weak as to
do no more than create a mere surmise or suspicion of its existence, its legal
effect is that it is no evidence.  Haynes
& Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex. 1995).  Generally, if the court of appeals sustains a
"no evidence" point, it is the court's duty to render judgment for
appellant.  Vista Chevrolet, Inc. v.
Lewis, 709 S.W.2d 176, 176 (Tex. 1986) (quoting Nat’l
Life Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex. 1969)).  

A no-evidence point must and can only be sustained when the record
reveals: (1) a complete absence of evidence of a vital fact; (2) rules of law
or rules of evidence bar the appellate court from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; and (4) the evidence conclusively
establishes the opposite of a vital fact. 
Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d
660, 666 n.9 (Tex. 1990) (citing Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362‑63 (1960)).








When we review an "insufficient-evidence" point challenging
the factual sufficiency of the evidence to support a finding that favors the
party who had the burden of proof on that finding, we may set aside the finding
only if a review of all the evidence, both for and against the finding,
demonstrates that the finding is clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Checker Bag
Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.CWaco 2000, pet. denied).  Reversal
could occur because the finding was based on weak or insufficient evidence or
because the proponent's proof, although adequate if taken alone, is overwhelmed
by the opponent's contrary proof.  Checker
Bag, 27 S.W.3d at 633 (citing William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence," 69 Tex. L. Rev.
515, 519 n.11 (1991)).

medical-negligence requirement

In a medical-negligence case, the plaintiff is required to show evidence
of a “reasonable medical probability” that the injury was proximately caused by
the negligence of the defendant.  Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995); Duff v.
Yelin, 751 S.W.2d 175, 176 (Tex. 1988).  There are four elements to be proved: (1) a
duty by the physician/nurse/hospital to act according to applicable standards
of care; (2) a breach of the applicable standard of care; (3) an injury; and
(4) a causal connection between the breach of care and the injury.[1]  Cruz v. Paso Del Norte Medical Found.,
44 S.W.3d 622, 629-30 (Tex. App.CEl Paso 2001, pet. denied).

                          WAS PROVIDENCE=S NEGLIGENCE A CAUSE?

Providence=s first issue attacks
the finding of causation,[2]
asserting that the evidence does not support a conclusion that any negligence
on their part was a Acause in fact@ of Lance=s suicide.  They say the connection between these
defendants and Lance=s suicide is Asimply too attenuated to constitute legal cause.@ [3]

The components of proximate cause are cause in fact and
foreseeability.  Travis v. City of Mesquite, 830 S.W.2d
94, 98 (Tex. 1992).  These elements cannot be
established by mere conjecture or guess, but must be proven by evidence of
probative force.  McClure v. Allied
Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980); Farley v. M M
Cattle Co., 529 S.W.2d 751, 755 (Tex. 1975); see also
Lenger v. Physician=s Gen. Hosp., Inc., 455 S.W.2d 703, 706 (Tex. 1970) (proof must be Abeyond the point of mere conjecture@); Blankenship v.
Mirick, 984 S.W.2d 771, 775 (Tex. App.CWaco 1999, pet. denied).








The jury answered affirmatively the broad-form question whether the
negligence of Providence proximately caused the injury in question.  The charge instructed the jury as to the
meaning of proximate cause.  Providence does not attack the
charge or the finding, as such.  Rather,
it says that two opinions of the Texas Supreme Court that address the element
of proximate cause, both discussing Section 431 of the Restatement (Second) of Torts, justify a finding of no
proximate cause as a matter of law.

The Dowells introduced expert testimony on the issue of causation, which
was not objected to by Providence and is not attacked on appeal. 
We measure sufficiency of the evidence by the court's actual charge, not
some other unidentified law, when the opposing party fails to object to the
charge.  Osterberg v. Peca, 12
S.W.3d 31, 55 (Tex. 2000).  On the basis of the
expert=s testimony alone, we can determine that the record contains Asome evidence@ to support the jury=s finding of causation.  Orozco,
824 S.W.2d at 556.   Furthermore, we
cannot say a review of the evidence supporting and opposed to the finding of
causation, measured against the definition of proximate cause given to the
jury, demonstrates that the finding is clearly wrong and unjust.  Cain, 709 S.W.2d at 176; Checker Bag,
27 S.W.3d at 633.  With that review under
traditional standards in mind, we turn to an evaluation of Providence=s Aattenuation@ claim.

In Lear Siegler, Inc. v. Perez, Perez was pulling a mobile
traffic-control sign manufactured by Lear Siegler, which had malfunctioned at
an earlier time.  After Perez stopped on
the traveled part of the roadway and positioned himself near the sign, he was
struck by a vehicle driven by Lerma and later died from the injuries.  The Court concluded that the circumstances of
Perez=s injuries were too remotely connected with Lear Siegler=s negligence or product defect to constitute legal cause.  Lear Siegler, Inc. v. Perez, 819
S.W.2d 470, 472 (Tex. 1991).  After discussing Section
431, the court stated:

We recognize there may be cases in which a product defect or a
defendant's negligence exposes another to an increased risk of harm by placing
him in a particular place at a given time. 
Nonetheless, there are certain situations in which the happenstance of
place and time is too attenuated from the defendant's conduct for
liability to be imposed.

 

Id.  (Emphasis added).  In affirming the trial court=s grant of a summary judgment for Lear Siegler, the court noted, A[i]t is undisputed that Lerma was asleep, and proper operation of the
flashing arrow sign would have had no effect on his conduct.@  Id.








In Union Pump Co. v. Allbritton, a firefighter was injured when
she hopped or slipped off a pipe rack at a chemical plant, after helping
successfully extinguish a fire caused by a defective pump manufactured by Union
Pump.  Union Pump Co. v. Allbritton,
898 S.W.2d 773, 774 (Tex. 1995).  She asserted that the
fire and her injuries would never have occurred Abut for@ the defective
pump.  After the trial court=s summary judgment for the defendant was reversed by the court of
appeals, the Supreme Court noted that the question was whether Union Pump
established that neither its conduct nor its product was a legal cause of
Allbritton=s injuries.  Id. at 775.  AStated another way, was Union Pump correct in contending that there was
no causative link between the defective pump and Allbritton=s injuries as a matter of law?@  Id.  The Court noted that cause in fact is an
element of both proximate cause and producing cause, Aincluding the requirement that the defendant=s conduct or product be a substantial factor in bringing about the
plaintiff=s injuries.@  Id.  The Court then said, A[a]t some point in the causal chain, the defendant=s conduct or product may be too remotely connected with the
plaintiff=s injury to constitute legal causation.@  Id. (emphasis added) (citing City of Gladewater v. Pike, 727 S.W.2d
514, 518 (Tex. 1987)).  Discussing Lear
Siegler, the Court said, A[a]s this Court
explained in Lear Siegler, the connection between the defendant and the
plaintiff=s injuries simply may be too attenuated to constitute legal
cause.  819 S.W.2d at 472.  Legal cause is not established if the
defendant=s conduct or product does no more than furnish the condition that makes
the plaintiff=s injury possible.@  Id. at 776.  The opinion also cites Bell
v. Campbell, a two-collision case involving Aintervening causes,@ as opposed to Aconcurring causes,@ where the Court
observed that Aall forces involved in
or generated by the first collision had come to rest@ before the second collision in which the plaintiffs sustained
injuries.  Id. (citing Bell v. Campbell, 434 S.W.2d 117, 122 (Tex. 1968)).

A third case, recently decided, involves the same question.  IHS
Cedars Treatment Ctr. v. Mason, 47 Tex. Sup. Ct. J. 666, 2004 Tex. LEXIS 534 (Tex. June 18, 2004).  In Mason, the plaintiff was injured while riding as a passenger in a
single-car accident.  Id. at *4.  Both she and the driver,
Thomas, had been released from a mental health care facility some twenty-eight
hours earlier.  Id.  She sued her doctor, the
driver’s doctor, a nurse, and the health care facility.  The trial court granted summary judgment,
finding no proximate cause; the court of appeals reversed and remanded for a
trial.  Id. at *6-7.  The Texas Supreme Court
noted that Mason did not argue that the defendants “caused Thomas to experience
a psychotic episode, drive wildly, or crash the Corvette.”  Id. at *17.  Thus, by releasing her,
they “merely created the condition” in which the accident occurred.  Id. at *11.








      Lear Siegler, Union Pump, and Mason
discuss the concept now asserted by Providence in terms of Aattenuation@ of causation.  That is to say, at some point in the chain of
events, the defendant=s negligence and later
events are simply too remotely connected for those events to be said to have
been Acaused@ by that negligence.  Providence says this is just such
a case and that we should make that determination as a matter of law.  We do not agree.








Providence points to the Asubstantial factor@ discussions in Lear
Siegler, Union Pump, and the Restatement.  Union Pump, 898 S.W.2d at 776; Lear
Siegler, 819 S.W.2d at 471-72; Restatement
(Second) of Torts ' 431 cmt. a
(1965).  But, Asubstantial factor@ has long been an
element of proximate cause in Texas.  Union Pump cites City of Gladewater
v. Pike, which states, ACause in fact means
that the omission or act involved was a substantial factor in bringing about
the injury and without which no harm would have occurred.@  City of Gladewater v. Pike, 727 S.W.2d 514, 517 (Tex. 1987).  Pike, in turn, cites McClure v.
Allied Stores of Texas, Inc. for the same definition, and McClure
cites Texas & Pacific Railway Co. v. McCleery, which states, ANegligent conduct is, in law, a cause in fact of harm to another only if
it is a substantial factor in bringing about the harm.@  McClure v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980); Texas &
Pac. Ry. Co. v. McCleery, 418 S.W.2d 494, 497 (Tex. 1967).  McCleery cites Hopson v. Gulf Oil
Co., a 1951 decision by the Supreme Court, stating: ATwo elements or tests of proximate cause are causation and the
limitation to foreseeable consequences. 
As to causation, it is said that if the defendant=s act or omission was a substantial factor in bringing about the result,
it will be regarded as a cause, and that ordinarily it will be such a
substantial factor if the result would not have occurred without it.@   Hopson v. Gulf Oil Co.,
150 Tex. 1, 237 S.W.2d 352, 355 (1951). 
Thus, for at least fifty years, Asubstantial factor@ has been a part of the test for determining proximate cause.  Furthermore, the Court has observed that the
issue of whether a particular act of negligence is a cause in fact of an injury
is a particularly apt question for jury determination.  Farley v. M M Cattle Co., 529 S.W.2d
751, 756 (Tex. 1975) (citing Prosser, Law of
Torts ' 41 at 237 (4th ed.
1971)).  "The question of proximate
cause is one of fact particularly within the province of a jury, and a jury
finding on proximate cause will be set aside only in the most exceptional circumstances."  Texas Dept. of Trans. v. Olson, 980
S.W.2d 890, 893 (Tex. App.CFort Worth 1998, no
pet.); see also Browning-Ferris,
Inc. v. Hobson, 967 S.W.2d 543, 546 (Tex. App.CHouston [14th Dist.] 1998, pet. denied); Rodriguez v. Moerbe, 963
S.W.2d 808, 818 (Tex. App.CSan Antonio 1998, pet.
denied); Potter v. Anthony Crane Rental of Tex., Inc., 896 S.W.2d 845,
850 (Tex. App.CBeaumont 1995, writ
denied).  The issue may, however, be a
question of law, such as in the summary judgment context presented in Lear Siegler, Union Pump, and Mason.








We note that this is a case involving a claim of negligent Aomission,@ i.e., the
failure by Providence to provide an Aappropriate psychiatric
screening,@ rather than a negligent Aact@ or a product defect.  The
question we confront is Adoes the evidence conclusively
show that Providence=s medically-negligent
omission, as found by the jury, ceased to be a cause in fact of Lance=s suicide because of the passage of time or other factors?@  If so, the trial court should
have granted Providence=s motion to disregard jury findings or motion for judgment
notwithstanding the verdict.

Lear Siegler, Union Pump, and Mason were summary judgment proceedings
where the trial court had granted a motion that established lack of causation
as a matter of law.  Mason, 2004 Tex. LEXIS 534, at *6-7; Union Pump, 898 S.W.2d at 774; Lear
Siegler, 819 S.W.2d at 472.  The
Court, of necessity, treated the issue as a question of law in that context. We
read the opinions as the Supreme Court saying that a court may, as a question
of law, weigh competing policy considerations and define the limits of legal
causation by Afixing the line between
immediate results and remote results@ of wrongful acts.[4]  Union Pump, 898 S.W.2d at 775 (quoting
Springall v. Fredericksburg Hosp. and Clinic, 225 S.W.2d 232, 235 (Tex.
Civ. App.CSan Antonio 1949, no writ)).

Providence points to these facts: (1) Lance appeared to be perfectly
normal when he was discharged, (2) no one knows precisely why he killed
himself, (3) thirty-six hours passed between his discharge and the suicide, (4)
it is just as likely that a new and unknown event triggered his suicide, (5) a
proper exam could not have guaranteed hospitalizationCbecause Lance might not have consented to stay, and (6) hospitalization
would not have guaranteed that treatment would have prevented the suicide.  There is clearly a fact issue as to cause in
fact and therefore the issue was properly decided by the jury.  Ambrosio
v. Carter’s Shooting Ctr., Inc., 20 S.W.3d 262, 269 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied).  These are factors that the jury
consideredCnone of them, nor all of them together, conclusively prove that Lance=s suicide was so remote from the negligence found by the jury that we
should say as a matter of policy that the jury=s verdict should be set aside.

Although the opinion does not discuss attenuation, we find support for
our position in Wilson v. Brister, 982 S.W.2d 42 (Tex. App.CHouston [1st Dist.] 1998, pet. denied). 
There, Dr. Brister treated his patient, Carr, one time for depressionCon October 29, 1991.  Wilson, 982 S.W.2d at 43.  On November
15, Carr shot herself in the head with a gun given to her by a friend.  Id.  Wilson, Carr=s father, sued Dr. Brister in a wrongful death and survival action,
complaining that the doctor=s omissions were a
proximate cause of his daughter=s death.  Id.  Dr. Brister moved for summary judgment on the
basis that Wilson could not prove causation, and the court granted the motion.  Id.  After noting that Dr. Brister=s deposition stated that the goal of hospitalizing a patient with
suicidal ideations was to prevent suicide, that Carr=s personal history increased the risk of suicide, and that the doctor
said she would have hospitalized Carr if Carr were imminently suicidal, but
denied that she was, the San Antonio Court examined the claim that the friend=s action in giving Carr a gun while knowing that she intended to commit
suicide was a break in the causation chain. 
Id. at 44.  Also noting that when criminal conduct is
foreseeable that conduct does not truncate a previous tortfeasor=s liability, the court reversed the summary judgment, stating: AThough Dr. Brister offered proof of an intervening cause, she did
not conclusively prove that her negligent acts or omissions were not a
concurring cause.  Because a causation
issue remained, [Dr. Brister] did not prove entitlement to summary judgment as
a matter of law.@  Id. at 45.

We overrule issue one.

                          WAS
THE PARENTS= NEGLIGENCE A CAUSE?

  At the conclusion of the trial, Providence requested that the
court inquire of the jury whether any of the Dowells= actions during the time between Lance=s visit to the hospital and his suicide were a cause of his suicide.  The Dowells respond by saying (1) they had no
duty to their adult child with respect to this issue and (2) Lance=s actions were not a proper subject of inquiry because of section 93.001
of the Civil Practice and Remedies Code, which provides that suicide is not a
defense if it was caused in whole or in part by the defendant=s failure to comply with an applicable legal standard.  Tex.
Civ. Prac. & Rem. Code Ann. ' 93.001 (Vernon Supp. 2004-2005).

Providence does not address the
question of duty.  The Dowells cite two
cases: Boyd v. Texas Christian University, where the Fort Worth Court
declined to impose a duty on the University to control, supervise, or
discipline its adult student athletes, and Villacana v. Campbell, where,
in a suit brought by two murder victims= parents, the Corpus
Christi Court affirmed a summary judgment in favor of parents whose son, while
living with them, committed the murders. 
Boyd v. Texas Christian Univ., 8 S.W.3d 758, 760 (Tex. App.CFort Worth 2000, no pet.); Villacana v. Campbell, 929 S.W.2d 69,
75-77 (Tex. App.CCorpus Christi 1996,
writ denied).  We will follow the
reasoning of the Corpus Christi Court on the issue of negligent control:

Liability for negligence requires the existence of a legally cognizable
duty.  The court decides whether a duty
exists under the facts surrounding the occurrence in question.  A court can, therefore, properly dispose of a
negligence case by summary judgment if it finds no duty in the actor even
assuming all facts alleged in the petition are true.

 








There is no general duty to control the conduct of third persons.  This rule applies even if the actor has the
practical ability to control the third person. The law creates exceptions to
this rule when the actor and the third person have a special relationship which
imposes a duty upon the actor to control the third person's conduct.  Included within these special relationships
is that of parent/child.

 

A child is a "person under 18 years of age who is not and has not
been married or who has not had the disabilities of minority removed for
general purposes."  TEX. FAM. CODE
ANN. ' 11.01(1) (repealed 1995) (recodified at ' 101.003(a) (Vernon Supp. 1996)). 
An adult is any other person.  Id. (recodified at ' 101.003(c)).  No current Texas law imposes liability
on a parent for the actions of an adult child. 
We hold that, as a matter of law, appellants have no cause of action for
negligent control, and the trial court's grant of summary judgment was proper.

 

Villacana, 929 S.W.2d at 75 (case citations
omitted).  We likewise find no duty on
the part of Lance=s parents to control
his actions.  We overrule issue two.




REMAINING ISSUES

     Issues three and four assert
that the judgment is improper because the Dowells did not assert a claim on
behalf of Lance’s child, Alec, and that they had no standing to sue.  Providence’s fifth and final issue asserts there is no
evidence to support the jury’s finding of damages for pain and mental
anguish.  We overrule
these issues for the reasons stated with respect to corresponding issues in the
companion case, decided today.  Pettit v. Dowell, No. 10-01-00420-CV,
slip op. at 6-9 (Tex. App.—Waco September
 29, 2004, no pet. h.).

                                                   CONCLUSION

Having overruled all issues, we affirm the
judgment as to Providence and DePaul.

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

          (Chief Justice Gray dissenting)

Affirmed

Opinion
delivered and filed October 6, 2004

 

[CV06]











   [1]   Only the fourth element is at issue in this
appeal.





   [2]   Providence
does not attack the finding that Fox failed to use ordinary care.





   [3]   Dr. Pettit’s attack on causation is based on
an argument that the expert testimony admitted to prove causation was
unreliable.





   [4]   We also note Justice Cornyn=s
lengthy concurring opinion, in which he disagrees with the Court=s
cause-in-fact analysis and concludes that such questions would be better analyzed
under the foreseeability element of proximate cause and the Adamages
occurring in a natural and continuous sequence@
inquiry under producing cause.  Union
Pump Co. v. Allbritton, 898 S.W.2d 773, 777-86 (Tex.
1995) (Cornyn, J. concurring).