NO. 07-07-0126-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 28, 2008



______________________________




IN THE INTEREST OF M.D., A CHILD



_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 71,326-D; HONORABLE DAVID L. GLEASON, JUDGE (1)



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Appellants, Natasha and Timothy, (2) appeal the trial court's order terminating their
parental rights to their son, M.D. By her brief, Natasha presents four issues challenging
the termination. By issues one and two, she maintains the evidence is insufficient to
support the trial court's findings that she knowingly placed or knowingly allowed her child
to remain in conditions which endangered his physical or emotional well being and that she
engaged in conduct that endangered her child or placed her child with persons whom she
knew endangered her child. By her third issue, she contends that termination was not in
the best interest of her child, and by her final issue presents a public policy argument that
termination is improper when a parent contacts the Texas Department of Family and
Protective Services for help.

 By separate brief, Timothy raises four issues to contest the termination. By issues
one and two, he challenges § 263.405(b) and (i) of the Texas Family Code as being
violative of his federal and state due process rights by requiring a statement of points to
be filed within fifteen days after the trial court signs the termination order. (3) By issues three
and four, Timothy challenges the sufficiency of the evidence to support the trial court's
findings that he knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endangered his physical or emotional well being and that he engaged
in conduct or knowingly placed the child with persons who engaged in conduct which
endangered his physical and emotional well being. We affirm. 

 Relying on In re T.C., 200 S.W.3d 788 (Tex.App.-Fort Worth ), and In re R.J.S., 219
S.W.3d 623 (Tex.App.-Dallas 2007, pet. denied), the Department contends that §
263.405(b) and (i) of the Texas Family Code precludes review of Natasha and Timothy's
issues for failing to timely file a statement of points. We agree.

 A party intending to appeal a final order rendered under subchapter E of chapter
263 of the Texas Family Code must file with the trial court, no later than fifteen days after
the final order is signed, a statement of points on which the party intends to appeal. §
263.405(b). The statement of points may be filed separately or it may be combined with
a motion for new trial. Id. An appellate court may not consider any issue that was not
specifically presented to the trial court in a timely filed statement of points. § 236.405(i). 

 The order being appealed in this case is a final order rendered under subchapter
E of chapter 263 of the Texas Family Code; therefore, Natasha and Timothy were required
to file a statement of points. The failure to timely file a statement of points does not
deprive this Court of jurisdiction over the appeal; however, it is a procedural prerequisite
to the appellate court's authority to consider any issue presented. See § 263.405(i). See
also In re R.C., 243 S.W.3d 674, 675-76 (Tex.App.-Amarillo April 25, 2007, no pet.). 


Procedural Background


 The Department filed its First Amended Petition seeking, among other relief,
termination of Natasha and Timothy's parental rights to their child. Following a hearing on
March 19, 2007, the trial court advised the parents of its intention to terminate their
parental rights. On March 23, 2007, and March 26, 2007, the trial court appointed counsel
on appeal for Natasha and Timothy, respectively. The trial court signed the termination
order on April 4, 2007, making the statement of points due no later than April 19, 2007. 
No motion for new trial was filed by either parent. Natasha did file a statement of points
on June 28, 2007, well after the fifteen day deadline.

§ 263.405(b) and (i)


 While several of our sister courts have questioned the practical application and
constitutional validity of this statute and have recommended that the Legislature reconsider
the statute in light of the potentially harsh effect of its application, (4) every intermediate
appellate court in this State has agreed that the statute, as written, prohibits appellate
courts from considering points not properly preserved by the timely filing of a statement of
points. See In re J.O.A., ___S.W.3d___, No. 07-07-0042-CV, 2008 WL 495324 at *4, fn.
8 (Tex.App.-Amarillo Feb. 25, 2008, no pet. h.). Because Natasha and Timothy's issues
relating to the sufficiency of the evidence, best interest of the child, and public policy
argument were not presented to the trial court in a timely filed statement of points as
otherwise required by § 263.405(b) and (i), they were not preserved; therefore, we will
proceed to address their due process argument. They contend the procedural requirement
that a statement of points be filed within fifteen days after the trial court signed the
termination order violated their federal and state due process rights. We disagree.

Due Process Violation


 If possible, courts must interpret a statute in a manner that renders it constitutional. 
FM Properties. Operating Co. v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000). A party
challenging the constitutionality of a statute must establish that the statute always operates
unconstitutionally. Wilson v. Andrews, 10 S.W.3d 663, 670 (Tex. 1999). In reviewing a
facial challenge to a statute's constitutionality, we consider the statute as written, rather
than as it operates in practice. Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 626-27 (Tex. 1996).

 Natasha's appointed appellate counsel points out that he filed a statement of points 
within fifteen days after receiving the reporter's record, which was necessary to fully
develop a statement of points. He argues that the fifteen day period in which to file the
statement of points from the date the trial court's order was signed violated Natasha's due
process rights by "barring her from access to the court system." Counsel ignores the fact
that he was appointed twenty-seven days prior to the statement of points being due, as
well as the fact that he also served as appointed trial counsel. Regardless of when he
received the reporter's record, he should have been able to fully develop a timely
statement of points. The statute, as written, does not provide for filing a statement of
points within fifteen days of receiving the reporter's record. Such an interpretation would
defeat the expediency intended by the Legislature in enacting the statute. See In re R.J.S.,
219 S.W.3d at 626.

 Timothy's appointed appellate counsel (5) maintains that the arbitrary designation of
a date certain to file specific issues for appeal is unnecessary when the Legislature has
granted the right to appeal. He argues that the statute promotes a system of unreasonably
restricting an indigent parent's right to appeal a termination order thereby violating a
parent's due process rights. Section 263.405(i) operates equally to indigent as well as
non-indigent parents. Therefore, it does not, in and of itself, operate to restrict an indigent
parent's right to appeal a termination order.

 Additionally, counsel urges that Timothy's notice of appeal "evidences his intent to
appeal the decision of the trial court." Once again, as written, § 263.405 does not provide
that a notice of appeal (which provides no notice to the trial court) expressing
dissatisfaction with the trial court's order is sufficient to satisfy the requirement for a timely
filed statement of points.

 Under the facts of this case, a procedural requirement, i.e., a specific number of
days within which to file a document, in and of itself, did not violate Natasha or Timothy's
due process rights. Timothy's first and second issues and Natasha's two reply issues
alleging due process violations are overruled. 

Conclusion

 Having rejected Natasha and Timothy's due process arguments, we conclude that
neither Natasha nor Timothy have preserved any of their arguments based on sufficiency
of the evidence, best interest of the child, or public policy for appellate review. Natasha's
four issues raised in her original brief are overruled, and Timothy's third and fourth issues
are overruled.

 Consequently, the trial court's order terminating Natasha and Timothy's parental
rights to their child, M.D., is affirmed. 


 Patrick A. Pirtle

 Justice

1. Sitting by assignment for the Honorable Don Emerson.
2. To protect the parents' and child's privacy, we refer to the parents by their first
names and the child by his initials.  See Tex. Fam. Code Ann. § 109.002(d) (Vernon
2002).
3. Natasha filed a reply brief also contending that § 263.405(b) and (i) violates her
federal and state due process rights by requiring a statement of points to be filed within
fifteen days after the order is signed. Technically, Rule 38.3 of the Texas Rules of
Appellate Procedure does not allow an appellant to raise a new issue in a reply brief that
was not raised in the original brief. See Gray v. Woodville Health Care Center, 225 S.W.3d
613, 620 (Tex.App.-El Paso 2006, pet. denied); Howell v. Texas Workers' Compensation
Com'n, 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, 2 pets. denied). However, because
Timothy challenged the statute in his original brief, in the interest of justice, we will also
review Natasha's challenge.
4. In re R.M.R., 218 S.W.3d 863, 864 (Tex.App.-Corpus Christi 2007, no pet.); Pool
v. Tex. Dep't. of Family & Protective Services, 227 S.W.3d 212, 215 (Tex.App.-Houston
[1st Dist.] 2007, no pet.); In re D.A.R., 201 S.W.3d 229, 231 (Tex.App.-Fort Worth 2006,
no pet.); In re E.A.R., 201 S.W.3d 813, 814 (Tex.App.-Waco 2006, no pet.) (Vance, J.,
concurring). 
5. The clerk's record reflects that Timothy's appointed appellate counsel also served
as his trial counsel.


xpense would be wasteful and futile. Id. The determination of whether a given error
necessitates a mistrial must be made by examining the particular facts of the case. Id. 
Further, on appeal, we generally presume the jury follows the trial court’s instructions, such
as an instruction to disregard, in the manner presented. See Thrift v. State, 176 S.W.3d
221, 224 (Tex.Crim.App. 2005). While the presumption is refutable, the appellant must be
able to point to evidence contained in the record to prove that the jury failed to follow the
trial court’s instruction. Id.
Motion for Mistrial-Extraneous Offense Testimony
          Appellant’s first issue concerns a portion of the testimony of Henderson. After
describing a number of observations that lead Henderson to believe that appellant might
be carrying drugs in his vehicle, the State asked, “And was it at that point where you asked
for permission to search the vehicle.” Henderson replied that,
As I issued the citation, I could hear on my outside speakers that Childress
DPS was giving back his prior criminal arrests, I went and stood by my car
and listened to those. It advised that he had been arrested for reckless
driving, DUI and also had a prior arrest for violation of a controlled
substance, dangerous drug. At that point in time, I finished the citation.
 
Appellant’s trial counsel objected and, after a discussion at the bench, the trial court
sustained the objection and instructed the jury to disregard and not consider the last
statement of the witness for any purpose. Appellant moved for a mistrial and the motion
was denied.
          The record before the Court reflects that the statement made by Henderson was not
given in answer to a question designed to elicit testimony about any extraneous offenses. 
Clearly, the question was to determine when the officer asked for permission to search and
not why he asked permission to search the vehicle. Further, appellant has pointed to no
evidence in the record that would indicate that the jury failed to follow the immediate
instruction of the trial court to disregard the testimony. Id. Under these facts we must
assume that the jury followed the instructions of the trial court to disregard the testimony. 
Ladd, 3 S.W.3d at 567. Accordingly, no error has been shown. Id. Appellant’s issue
regarding the first mistrial motion is overruled.
Motion for Mistrial-Prosecutorial Misconduct
          Appellant’s next contention involves two alleged instances of prosecutorial
misconduct that required a mistrial. We will examine each alleged incident. 
          In the first instance, after the jury had been selected and sworn, but while the jury
was out of the courtroom, the trial judge instructed appellant and trial counsel to switch
seats at counsel table. The instruction to change places at counsel table was based upon
a request made to the trial court by the State’s attorneys. It is noteworthy that the trial
court also stated that the changing of seats would better accommodate the terrible
acoustics in the courtroom.
          The second instance of alleged misconduct by the State’s attorneys occurred when
appellant testified. After appellant had finished testifying and returned to his seat, trial
counsel asked permission to approach the bench. At the bench conference, trial counsel
complained about the action of the State’s attorneys standing and moving away from
counsel table when appellant walked behind counsel table going to or from the witness
chair. Counsel’s complaint at trial was that this sent a message to the jury that appellant
was a dangerous and bad man. The trial court stated that it was common practice for the
State’s attorneys to move away from counsel table when a defendant walked behind
counsel table going to and from the witness chair. 
          Although appellant contends that these actions, in both instances, were acts of
prosecutorial misconduct, he has provided the court with no authority for that proposition. 
In fact, appellant has provided the court with no authority for how the courts in Texas even
define prosecutorial misconduct. As such, appellant has failed to properly brief this issue. 
See Tex. R. App. P. 38.1(i). Appellant has therefore, waived the issue. See Cardenas v.
State, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000). 
          Assuming that appellant’s brief does properly brief the subject, we note that one
instance occurring, as it did, outside the presence of the jury could not have inflamed the
minds of the jury to such an extent to render proceeding with trial a wasteful and futile
endeavor. Ladd, 3 S.W.3d at 567. As to the second instance, there is nothing in the
record that reflects the jury’s attention was drawn to the conclusion that appellant would
have us reach, that is that the jury perceived appellant as a violent and dangerous person. 
The decision of a trial judge regarding permissible security precautions in court are
reviewed for abuse of discretion. See Long v. State, 823 S.W.2d 259, 282 (Tex.Crim.App.
1991). We find nothing in the record to support the conclusion that the trial court’s decision
in this matter was an abuse of discretion. 
Legal and Factual Sufficiency
          Appellant challenges both legal and factual sufficiency. Therefore, we are required
to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find
the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. 
See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).
          In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency
of the evidence against a hypothetically correct jury charge. See Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).
          When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finder’s
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the jury’s verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has
recently declared that when reviewing the evidence for factual sufficiency, the reviewing
court should measure the evidence in a neutral manner “against a hypothetically correct”
jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.), citing Wooley v. State,
273 S.W.3d 260, 268 (Tex.Crim.App. 2008). 
 
Legal Sufficiency
          To prove appellant guilty of the indicted offense the State had to prove: 1) appellant;
2) intentionally or knowingly; 3) possessed; 4) a controlled substance, cocaine; 5) in an
amount of 400 grams or more. See Tex. Health & Safety Code Ann. § 481.115 (Vernon
2003). Appellant’s contention about the sufficiency of the evidence centers on the proof
that appellant possessed the cocaine. To establish possession, the State must prove that:
1) appellant exercised control, management or care over the substance, and 2) appellant
knew the matter possessed was contraband. See Poindexter v. State, 153 S.W.3d 402,
406 (Tex.Crim.App. 2005). Because appellant was alone in the vehicle in which the
cocaine was found, he may be deemed to have possessed it. See Menchaca v. State, 901
S.W.2d 640, 652 (Tex.App.–El Paso 1995, no pet.). This is because knowledge of the
cocaine is inferred from control of the vehicle. Id. However, when the contraband is in a
hidden compartment, as was the cocaine in the case at bar, we are cautioned that reliance
should not be placed solely upon control of the vehicle. Id. (citing U.S. v. Olivier-Becerril,
861 F.2d 424, 426-27 (5th Cir. 1988). In order to establish possession in such a situation
we must look at the other factors surrounding appellant’s connection to the cocaine. Id. 
The type of factors we review are akin to the factors that link a defendant to contraband
in a situation where the defendant is not in exclusive possession of the cocaine. Id.
          A review of the facts reveals the following factors that a jury might consider. First,
there is the initial and continuing nervousness of appellant when Henderson approached
the vehicle. Henderson’s testimony was that appellant’s voice was strained and his hands
shook when appellant handed over his driver’s license and insurance card. Next, appellant
was unable to accurately answer who owned the vehicle. He initially stated David and
then, according to Henderson, appellant appeared to read the name on the insurance card
and correctly stated Mark. Appellant advised he was traveling from Phoenix, Arizona. 
When asked where he was headed, appellant stated Cleveland, Ohio, however he was not
able to give an address in Cleveland as his destination. Additionally, on the seat next to
appellant was an road atlas open to Columbus, Ohio, with an address in Columbus written
on it. Then, there is the issue of the strong smell of the air freshener coming from the
vehicle. Alone, this might be subject to some rational explanation. However, when
Henderson investigated further, he found that the rear compartment of the vehicle had a
very strong smell of fresh paint and “bondo.” This could lead a jury to view appellant’s
action of spraying the air freshener to mask the smell of the paint and “bondo” for fear that
Henderson would find the hidden compartment. This becomes important because it was
this subsequent paint and “bondo” smell that led Henderson to believe that some recent
modifications had been made to the rear compartment of the vehicle. Also, an ice chest
was located in the passenger compartment next to the driver. Henderson opined that, in
his experience in drug interdiction, people transporting drugs often carry food with them so
that they do not have to leave the vehicle and drugs unattended during their trip. Finally,
there was the testimony of FBI Agent Gill about his investigation of drug trafficking in the
Columbus, Ohio area. During his investigation, Agent Gill was able to ascertain that
appellant was a good friend of Fernando Sandoval, the person Gill was investigating and
who was later convicted of drug trafficking. That investigation revealed that appellant came
to Columbus, Ohio, to visit Fernando and flew from Columbus, Ohio, to Phoenix, Arizona,
on December 4, which was two days before appellant’s arrest.
          Appellant cites the Court to an unreported case from the Texas Court of Criminal
Appeals, contending that the facts of the present case are so similar to the cited case that
we should adopt the opinion of the Court of Criminal Appeals. See Molina v. State, Nos.
205-03, 206-03, 2003 WL 22250391 (Tex.Crim.App. Oct. 1, 2003) (mem. op., not
designated for publication). However, the facts of Molina are clearly distinguishable from
the case at bar. First, Molina was a passenger and not the driver of the car. Id. at *2. 
Second, Molina’s co-defendant testified that Molina did not know about the drugs. Id. at
*3. Third, prior to the trip where Molina was arrested, there was no evidence that
connected him with the car. Id. at *3. Finally, although Molina did exhibit nervousness
when the stop commenced, he gave his true name and destination. Id. The testimony of
his co-defendant bore out this information. The Court in Molina held that there were
insufficient links to connect Molina with the drugs, and, therefore, to prove his knowledge
of the existence of them. Id. at *4. Accordingly, we do not find Molina to be controlling.
          It must be remembered that proof of culpable mental state generally exists only in
circumstantial evidence. See Dillon v. State, 574 S.W.2d 92, 94 (Tex.Crim.App 1978). 
Therefore, proof of knowledge is an inference drawn by the trier of fact from all of the
circumstances. Id. From our review of the circumstances, we believe that the jury could
have convicted appellant of the charge of possession of cocaine beyond a reasonable
doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant’s
challenge to the legal sufficiency of the evidence is overruled. 
 
Factual Sufficiency 
          We note that appellant’s brief states that he is challenging the factual sufficiency of
the evidence. However, the brief appears to only address the legal sufficiency of the
evidence. Out of caution we will, however, address factual sufficiency. 
          To determine the factual sufficiency of the evidence, we must now review the
evidence in a neutral light to determine its sufficiency. Watson, 204 S.W.3d at 415. When
we examine the links in the evidence that would tend to connect appellant to the cocaine,
in addition to his exclusive control of the vehicle, we find that a jury would be rationally
justified in finding appellant guilty beyond a reasonable doubt. Id. This is so because the
jury’s determination of this matter is supported by the evidence. Id. We must give
deference to that determination when it is supported by the evidence. Id. Finally, appellant
has not pointed to any single factual deficiency, other than that explored during the legal
sufficiency portion of this opinion, that would undermine our confidence in the jury’s verdict. 
Sims v. State, 99 S.W.3d at 603. Having already addressed those issues, we overrule
appellant’s factual sufficiency challenge.
Conclusion
          Having overruled appellant’s issues, we will affirm the judgment of the trial court.
 
                                                                Mackey K. Hancock

                                                                          Justice

Do not publish.