Martha GRAY, Rose Marie Salvato, and Edmund Higginbotham, Executor of the Estate of Mary Ann Higginbotham, Appellants,

v.

WOODVILLE HEALTH CARE CENTER d/b/a Woodville Convalescent Center d/b/a Cantex Health Care Centers d/b/a Denison Healthcare Center, Ltd. Co., and Kerry Evans, M.D., Appellees.

No. 08–05–00033–CV.

Court of Appeals of Texas, El Paso.

Aug. 3, 2006.

Rehearing Overruled Oct. 4, 2006.

R.A. Eichelberger, Baytown, for Appellants.

David Michael Walsh IV, Dallas, Marvin C. Moos, Ebanks, Smith & Carlson, L.L.P., Houston, for Appellees.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

### OPINION

ANN CRAWFORD McCLURE, Justice.

Martha Gray, Rose Marie Salvato, and Edmund Higginbotham, Executor of the Estate of Mary Ann Higginbotham appeal from summary judgments granted in favor of Dr. Kerry Evans and Woodville Healthcare Center. At issue is whether Appellants presented evidence of causation to support their negligence claims. Because they did not, we affirm.

### FACTUAL SUMMARY

Brayton Gray was eighty years old when he entered the Woodville nursing home on December 27, 1999. He was recovering from surgery due to a right hip fracture sustained ten days earlier. At the time of his admission, Gray had undergone angioplasty, was suffering from Parkinson's disease, and was considered anorexic. During his stay at Woodville, Gray developed two infections. The first was an upper respiratory infection which was treated with antibiotics. The second was a urinary tract infection which required hospitalization on January 23, 2000.

On January 26, 2000, Gray's condition worsened and he became non-responsive. Dr. Evans noted that he spoke with Gray's family regarding his condition and recommended Gray be placed under hospice care. The family agreed. Gray was transferred back to Woodville with Dr. Evans' diagnosis being end stage Parkinson's disease and malnutrition. Dr. Evans discontinued all of Gray's medications except for Dulcolax for constipation, Tylenol for fever or pain, and Thorazine for any anxiety. Dr. Evans also ordered a diet of thickened liquids if requested. Gray died the next day.

Appellants are Gray's daughters—Martha Gray, Rose Marie Salvato, and Edmund Higginbotham as Executor of the Estate of Mary Ann Higginbotham. They filed a wrongful death suit alleging medical malpractice, gross negligence, and negligence *per se*. Dr. Evans and Woodville filed motions for summary judgment on both traditional and no-evidence grounds. They contended Appellants had failed to present any evidence of causation or breach of the standard of care. The trial court granted Dr. Evans' no-evidence motion and Woodville's traditional and no-evidence motions.

### DEPRIVATION OF CONSTITUTIONAL RIGHTS

■ In their first issue, Appellants claim Appellees violated Gray's Fourteenth Amendment rights to life, liberty, and property by depriving him of the right to make his own healthcare decisions necessary to sustain life. The Fourteenth Amendment mandates that no State shall "deprive any person of life, liberty, or property without due process of law." *Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 278, 110 S.Ct. 2841, 2851, 111 L.Ed.2d 224 (1990). It is inapplicable here because there has been no state action. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Appellants produced no evidence that the actions of Dr. Evans and Woodville relate to "state action." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972); *Black v. Jackson,* 82 S.W.3d 44, 54 (Tex. App.-Tyler 2002, no pet.)(a litigant who alleges a constitutional violation by a private citizen must also allege facts showing

that the conduct of the private citizen can in some way be ascribed to an act or decision by the state).

In support of their argument, Appellants rely on *Cruzan* for the proposition that the Due Process Clause protects an interest in life as well as an interest in refusing life-sustaining medical treatment. *Cruzan,* 497 U.S. at 278, 110 S.Ct. 2841. There, the Supreme Court considered the issue of whether a woman in an unconscious vegetative state had a constitutional right to demand that the hospital remove life-sustaining treatment. *Id.* at 269, 110 S.Ct. 2841. The patient's parents sought a court order to terminate their daughter's artificial nutrition when the hospital refused to do so. State action was implicated because the cost of hospitalization was being provided by the State of Missouri. *Id.* at 266–69, 110 S.Ct. 2841. Because Appellants have not produced evidence of state action, *Cruzan* is inapplicable. Consequently, Appellants lack standing to pursue the constitutional claims.

They lack standing for a second reason. The rights protected under the Fourteenth Amendment are personal rights. *Shelley,* 334 U.S. at 22, 68 S.Ct. 836. But Appellants filed suit solely under the Wrongful Death Act, not the Texas Survivor Statute. The purpose of the Wrongful Death Act is to provide a means whereby surviving spouses, children, and parents can personally recover for their loss of a family member. *Cooper Tire & Rubber Co. v. Mendez,* 155 S.W.3d 382, 415 (Tex.App.-El Paso 2004, pet. granted), *citing Garza v. Maverick Market, Inc.,* 768 S.W.2d 273, 275 (Tex.1989); *See* Tex.Civ.Prac. & Rem. Code Ann. § 71.004(a)(Vernon 1997). It does not provide a recovery for Gray's injuries. Because Appellants lack standing to argue that Gray's constitutional rights were violated, we overrule Issue One.

## DID APPELLANTS PRODUCE EVIDENCE OF CAUSATION?

We next address the fourth and fifth issues for review. The bases of the motions for summary judgment addressed Appellants' failure to produce evidence of proximate cause and breach of the standard of care. Appellants responded that they presented sufficient evidence to raise a genuine issue of material fact on the contested elements of their claims.

### *Standard of Review*

A no-evidence motion for summary judgment is essentially a pretrial directed verdict and we apply the same legal sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex. 2003). The party moving for a no-evidence summary judgment must specifically state the elements as to which there is no evidence. *Aguilar v. Morales,* 162 S.W.3d 825, 834 (Tex.App.-El Paso 2005, pet. denied); *See* Tex.R.Civ.P. 166a(I). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Aguilar,* 162 S.W.3d at 834. We view the evidence in the light most favorable to the non-movant and we must disregard all contrary evidence and inferences. *King Ranch,* 118 S.W.3d at 750. A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *Id.* at 751. Less than a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion, however, when the evidence rises to a level that enables reasonable minds to differ in their conclusions then more than a scintilla of evidence exists. *Id.* In a case such as this one where the

trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Aguilar*, 162 S.W.3d at 834, *citing Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Proximate Cause

■■■ As we have noted, this lawsuit alleged medical malpractice, gross negligence, and negligence *per se*. Proximate cause is an element for each of these causes of action. *Hodgkins v. Bryan*, 99 S.W.3d 669, 673 (Tex.App.-Houston [14th Dist.] 2003, no pet.), *citing Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988)(a plaintiff may establish a medical malpractice claim if the plaintiff proves the physician breached the standard of care and that the breach was the proximate cause of the patient's injuries); *First Assembly of God, Inc. v. Texas Utilities Elec. Co.*, 52 S.W.3d 482, 494 (Tex.App.-Dallas 2001, no pet.)(gross negligence requires a showing of proximate cause); *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 389 (Tex. App.-Houston [14th Dist.] 2005, pet. denied), *citing Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977)(negligence *per se* requires a showing of proximate cause). To establish proximate cause, a plaintiff must prove foreseeability and cause-in-fact. *IHS Cedars Treatment Center of DeSoto Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Cruz ex rel. Cruz v. Paso Del Norte Health Foundation*, 44 S.W.3d 622, 630 (Tex.App.-El Paso 2001, pet. denied). Regarding cause-in-fact, a plaintiff must be able to establish a causal connection based upon "reasonable medical probability," not mere conjecture, speculation, or possibility. *Cruz*, 44 S.W.3d at 630.

### Expert Testimony Required

Appellants suggest the issue of causation can be determined by a jury without expert testimony because causation is within their common knowledge. In support of their argument, they rely upon *St. Paul Medical Center v. Cecil*, 842 S.W.2d 808 (Tex.App.-Dallas 1992, no pet.). There, the court concluded that the standard of routine nursing care in a hospital need not be established by expert testimony. *Id.* at 812. It did not hold that causation may be established without expert testimony.

■■■ Appellants also rely, in essence, upon the doctrine of *res ipsa loquitur*, an evidentiary rule which allows negligence to be inferred because the circumstances surrounding the injury are sufficient to support such a finding. *Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 837 (Tex.App.-Houston [14th Dist.] 2005, pet. denied), *citing Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex.1990). The doctrine generally applies when the character of the injury is such that it would not ordinarily occur in the absence of negligence, and the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock*, 793 S.W.2d at 950. It has limited application in the context of medical malpractice. It is applicable where the nature of the negligence and the resulting injuries are plainly within the common knowledge of laymen. *Id.* at 951; *Linan v. Rosales*, 155 S.W.3d 298, 302–03 (Tex.App.-El Paso 2004, pet. denied). Examples include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body. *Haddock*, 793 S.W.2d at 951. Application is also limited to cases filed before the effective date of the Medical Liability and Insurance Improvement Act of Texas. *Id.* at 950. Where, as here, *res ipsa loquitur* does not

apply, a plaintiff must present expert testimony to establish causation. *Linan,* 155 S.W.3d at 302.

### Evidence Pertaining to Dr. Evans

We turn now to the evidence produced to establish causation. Appellants tendered the affidavit and deposition of Dr. Eichelberger, the deposition of Judith Anders, R.N., and the deposition of Ann Robbins, R.N.

### Affidavit of Dr. Eichelberger

■ In his affidavit, Dr. Eichelberger described his qualifications and experience, provided a list of medical documents he reviewed, identified the standard of care necessary to treat a patient suffering from Parkinson's disease and recovering from a fractured hip, and itemized the circumstances surrounding the breaches of the standards of care. Regarding the issue of proximate cause, Dr. Eichelberger stated:

> The medical care and treatments accorded by Brayton E. Gray, by both Dr. Kerry Evans, as the treating physician, and the Woodville Convalescent Center, and its employees, during his stay as a resident, listed above, clearly fell below the standard of care required for a patient suffering from Parkinson's disease and a recent hip pinning, were the causation of the death of Brayton E. Gray. The lack of treatment, and failure to provide a safe environment, whereby, he was exposed to infection and sustained two nosocomial infections, also resulted in a fatal condition.
>
> . . .
>
> It is my professional opinion based on my education and experience that Brayton Gray's death was caused by the refusal to administer any medications other than pain medication and withdrawal of nutrition without a valid Medical Power of Attorney or any indication of the Brayton Gray's wishes and desires concerning the withdrawal of medication or nutrition, contributed to Brayton Gray's Death on the date in question. Furthermore, Said actions would demonstrate an extreme risk to the patient Brayton Gray as is evidenced by his sudden death on January 27, 2000. Said actions would also indicate that Movant proceeded with a conscious indifference to the rights, safety or welfare of his patient Brayton Gray.

■ Dr. Evans contends the affidavit is conclusory. We agree. A conclusory statement in an expert affidavit is insufficient to raise a question of fact. *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 803 (Tex.2004), *citing McIntyre v. Ramirez,* 109 S.W.3d 741, 749–50 (Tex.2003). In *IHS,* the plaintiff's expert opined that the negligence of the defendant caused the plaintiff's injuries. *Id.* The Texas Supreme Court determined the testimony was insufficient to establish a causal nexus between the duty, breach, and injuries suffered by the plaintiff. *Id.* According to the court, the medical opinion was conclusory because the expert failed to provide an explanation of how the defendant's conduct was the cause in fact of the plaintiff's injuries. *Id.*

Similarly, Dr. Eichelberger's affidavit is conclusory because there is no explanation as to how Appellees caused Gray's death. The affidavit offers opinions as to breach of duty, but does not explain how the breaches caused Gray's death. *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999)(expert must explain the basis of his statements to link his conclusions to the facts). The affidavit is insufficient to raise a genuine issue of material fact as to causation.

*Deposition of Dr. Eichelberger*

 Next, Appellants argue that Dr. Eichelberger offered evidence of proximate cause in his deposition because he testified that Parkinson's disease would be exacerbated by discontinuing the administration of Sinemet. Sinemet is a drug used to treat the symptoms of Parkinson's disease. Dr. Eichelberger testified:

Q: The drug Sinemet?

A: Oh.

Q: Is that a life-sustaining drug?

A: That's used for his Parkinsonism, and depending on the time frame—and this is what I was trying to find out, when Dr. Evans discontinued all the medication—there is the possibility that he could certainly have some difficulty as far as his exacerbation of his Parkinsonism by discontinuing the medication.

 An expert's opinion based on speculation is no evidence of causation. *State Office of Risk Management v. Escalante*, 162 S.W.3d 619, 625 (Tex.App.-El Paso 2005, pet. dism.), *citing Schaefer v. Texas Employers' Ins. Ass'n*, 612 S.W.2d 199, 202–05 (Tex.1980)(an expert's testimony based on assumptions, possibility, speculation, and surmise constituted no evidence of causation). Dr. Eichelberger's testimony is based on the possibility that Gray may have experienced some "difficulty" when the medication was discontinued, but his speculation amounts to no evidence that it actually caused Gray's death.

*Deposition of Judith Anders, R.N.*

 Anders testified Gray was administered an antibiotic that was sensitive to the microorganism infection and that she had never known a doctor to withdraw hydration when a patient was improving with intravenous fluids. She also testified that some physicians in a hospice setting do not encourage hydration so that the brain will go into a more euphoric mode such that death comes easier. These opinions are conclusory because there is no causal nexus between the lack of hydration and Gray's death. *IHS*, 143 S.W.3d at 803. The record does not indicate Gray's death resulted from dehydration. Dr. Evans' physician notes and discharge summary indicate that death was due to cardiac failure and malnutrition related to end stage Parkinson's disease.

*Deposition of Ann Robbins, R.N.*

 Appellants next contend the testimony of Ann Robbins addressed proximate cause because she testified that without water "you would die." This statement does not provide a causal link between Gray's death and Dr. Evans conduct and is conclusory. *IHS*, 143 S.W.3d at 803. More importantly, Robbins specifically testified that she would not offer an opinion as to the cause of death.

### *Evidence Pertaining to Woodville*

Appellants also maintain that these same witnesses provided evidence of proximate cause as to Woodville's breach of the standard of care. They argue that Woodville caused Gray's death by "failing to provide medical and nursing care according to the standard of care required." Yet they fail to articulate what specific facts presented by the witnesses established causation. In our review of the record, we find no evidence of causation. We overrule Issues Four and Five.

### REMAINING ISSUES

Because Appellants did not raise a genuine issue of material fact on causation, we will briefly address the remaining issues. In Issue Two, Appellants contend the trial court erred in granting summary judgment because negligence *per se* is applicable. Even if we were to assume that it

applies, Appellants still did not provide evidence of causation. *Reinicke,* 167 S.W.3d at 389, *citing Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977)(negligence *per se* requires a showing of proximate cause). In Issue Three, Appellants challenge the exclusion of Ann Robbins' testimony, but it would not have sufficed even had it been admitted. She testified she was not providing an opinion on causation.

■ Appellants also allege that the motions for summary judgment were legally and factually insufficient. This issue has not been properly briefed and has been waived. *Ratsavong v. Menevilay,* 176 S.W.3d 661, 666 (Tex.App.-El Paso 2005, pet. denied)(failure to cite authority in support of contention constitutes waiver of issue on appeal). Finally, Appellants argue in their reply brief that the motions for summary judgment were untimely filed. This issue has not been preserved for review because the issue was not raised in their original brief. *Howell v. Texas Workers' Compensation Com'n,* 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied)(the rules of appellate procedure do not allow an appellant to include in a reply brief a new issue not raised by appellant's original brief). We overrule all issues for review and affirm the judgment of the trial court.