COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






ALFREDO MORENO AND FRANCES
MORENO, INDIVIDUALLY AND AS
HEIRS AND REPRESENTATIVES OF
THE ESTATE OF BERNADETTE
MORENO, DECEASED,

                            Appellants,

V.

JOSEPH A. QUINTANA, JR., M.D. AND
EL PASO HEALTHCARE SYSTEM,
LTD. D/B/A DEL SOL MEDICAL
CENTER,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 §

 §

  §

  §





No. 08-06-00134-CV

Appeal from the

120th District Court

of El Paso County, Texas 

(TC# 2005-2771) 






O P I N I O N

            Alfredo and Frances Moreno, on behalf of their daughter Bernadette Moreno, appeal the
trial court’s orders granting summary judgments in favor of Dr. Joseph Quintana, M.D. and
Del Sol Medical Center. We find that the trial court improperly granted both motions for
summary judgment, and we reverse the court’s take-nothing judgments and remand the case for
trial.
            Bernadette Moreno arrived at Del Sol Medical Center in El Paso on February 11, 2003, in
hypertensive crisis, under the care of Dr. Edward Juarez. Shortly after midnight, Ms. Moreno
was transferred to the intensive care unit by Physician Assistant Roy Malphurs due to
uncontrolled hypertension and respiratory distress. Her respiratory rate was between thirty-five
and forty, with low oxygen saturation in her blood, and her blood pressure was recorded at
190/110. At 3 a.m., Nurse Ruddy re-recorded Ms. Moreno’s vital signs. According to her chart,
Ms. Moreno’s blood pressure had risen to 205 over 126, her heart rate was 124 beats per minute,
she had a respiratory rate of forty, and a blood oxygen saturation of 90 percent. Nurse Ruddy
contacted Cardiologist Dr. Joseph Quintana to consult on Ms. Moreno’s case. Dr. Quintana
returned Nurse Ruddy’s page at 3:30 a.m. He accepted the consultation for Ms. Moreno’s
hypertension and ordered medication to reduce her blood pressure, but did not got to the hospital
to examine her in person. Ms. Moreno’s blood pressure remained above desirable levels until
between 5 and 5:30 a.m.
            At 9:55 a.m., contrast dye was administered in preparation for a cat-scan. At 10:25 a.m.,
Ms. Moreno was in emergency respiratory distress due to congestive heart failure. Dr. Adolfo
Palomino ordered several medications, including versed and two doses of succinylcholine to
prepare Ms. Moreno for intubation. Succinylcholine is used to paralyze the patient’s diaphragm
for intubation, and because of this, the patient is unable to breathe until the tube is properly
placed. Ms. Moreno was pronounced dead at 10:58 a.m., after she went into a pulseless electrical
heart rhythm, following complications when Dr. Palomino was unable to re-establish an airway.
            Alfredo and Frances Moreno, as representatives of the estate of Bernadette Moreno (“the
Morenos”), filed a medical malpractice suit against Dr. Quintana and El Paso Healthcare System,
Ltd. d/b/a Del Sol Medical Center on April 25, 2005. Both Dr. Quintana and Del Sol answered
the suit and filed independent hybrid motions for summary judgment. The Morenos timely filed
their responses to both motions and produced summary judgment evidence on the challenged
elements of breach and proximate cause. Dr. Quintana filed numerous objections to the
Morenos’ summary judgment evidence, including objections to the affidavit evidence and
deposition testimony of the Morenos’ medical expert witness Dr. David Ostrander and objections
to his own deposition testimony.
            By written order dated March 23, 2006, the trial court sustained Dr. Quintana’s objections
and excluded Dr. Ostrander’s affidavit and deposition from consideration. The court also
sustained Dr. Quintana’s objection to the Morenos’ supplement to their summary judgment
response and struck documentary evidence of Dr. Quintana’s orders for Ms. Moreno’s treatment
on February 12. On the same day, the trial court granted summary judgment for Dr. Quintana
specifically on no-evidence grounds and entered a take-nothing judgment against the Morenos. 
The court also granted Del Sol’s motion for summary judgment, although without specifying on
what basis, and entered another take-nothing judgment.
            The Morenos raise four issues on appeal. In Issues One and Two, the Morenos contend
the trial court abused its discretion by sustaining the objections to Dr. Ostrander and
Dr. Quintana’s affidavit and deposition testimony. The Morenos contend the evidence was
admissible, and therefore should have been considered as part of their summary judgment
response. In Issues Three and Four, the Morenos challenge the trial court’s summary judgments
in favor of Dr. Quintana and Del Sol.
            In Issue One, the Morenos contend that the trial court erred in sustaining Dr. Quintana’s
objections to the affidavit of expert witness, Dr. David Ostrander. Rulings on the admission or
exclusion of summary judgment evidence are reviewed under an abuse of discretion standard. 
Barraza v. Eureka Co., A Division of White Consolidation Industries, Inc., 25 S.W.3d 225, 228
(Tex.App.--El Paso 2000, pet. denied). A trial court abuses its discretion when the trial court
fails to act in accordance to guiding rules or principles. Bowie Memorial Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002).
            In its ruling on Dr. Quintana’s objections, the trial court specified it was sustaining
Dr. Quintana’s objection to Dr. Ostrander’s affidavit, because the affidavit “misrepresents
Dr. Quintana’s deposition testimony” and “does not consider Dr. Quintana’s sworn deposition
errata page and the sworn supplementation to Dr. Quintana’s deposition testimony.” The trial
court does not specify what “misrepresentation” it concluded was sufficient to warrant excluding
an otherwise uncontested expert opinion from consideration. However, Dr. Quintana purports a
misrepresentation exists in the difference between his own deposition and Dr. Ostrander’s
opinion testimony; specifically, Dr. Ostrander’s opinion that Ms. Moreno’s death was caused, in
part, by the delay in treating Ms. Moreno due to Dr. Quintana’s failure to see her in the hospital,
as compared to Dr. Quintana’s own deposition testimony that he may have treated Ms. Moreno
differently and more aggressively, had Nurse Ruddy told him how severe Ms. Moreno’s vitals
were. The record does demonstrate that Dr. Quintana exercised his right to clarify his deposition
testimony on numerous occasions prior to summary judgment, thereby preserving his disputes
with Dr. Ostrander’s opinions and interpretations of the record for the fact finder to resolve. 
Dr. Quintana has failed to cite, however, and we have been unable to locate Texas precedent
holding that an otherwise unchallenged expert affidavit is subject to exclusion from evidence
during summary judgment proceedings for “misrepresenting” another witnesses testimony, or for
allegedly failing to consider another witness’s clarifications of his testimony, or any other part of
the record in general.
            Indeed, under either summary judgment standard, the court is required to view the
evidence in the light most favorable to the non-movant and indulge all inferences and resolve all
doubts in the non-movant’s favor. See Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002). As such, it was the trial court’s duty to disregard Dr. Quintana’s disputes with
Dr. Ostrander’s opinions, and view the evidence in the Morenos’ favor alone. Ultimately,
whether or not this type of evidentiary “misrepresentation” has occurred can only be answered
when the fact finder determines what witnesses are credible and what weight to give their
testimony. Similarly, whether or not Dr. Ostrander considered all, or part, of the appropriate
evidence in coming to his expert opinions is a ripe subject for cross-examination. Such issues
are for the fact finder alone, and therefore, cannot be properly addressed at summary judgment. 
See City of Keller v. Wilson, 168 S.W.3d 802, 821-22 (Tex. 2005). Because there was no legal
basis for the trial court’s ruling, it abused its discretion by excluding Dr. Ostrander’s affidavit on
its stated basis. Issue One is sustained.
            In Issue Two, the Morenos argue the trial court also abused its discretion by sustaining
Dr. Quintana’s objections to excerpts from Dr. Quintana’s deposition testimony. The court
sustained Dr. Quintana’s objection to the Morenos’ Exhibit 8, lines 11-19 of page 45 of
Dr. Quintana’s own deposition, which the Morenos included in their response to Dr. Quintana’s
motion for summary judgment. Exhibit 8 included the following grounds: (1) compound
question; (2) Improper hypothetical; leaves out material facts; and (3) Improper standard,
predicate; improper foundation; improper question of “probably” rather than “reasonable medical
probability.” The Morenos’ entire discussion of this issue in their appellate brief consists of a
single paragraph, in which they conclude based on a single citation to Texas Rule of Evidence
801(e)(2)(3), that the challenged deposition testimony consisted of admissions of a party
opponent, and are therefore admissible. In addition, despite Dr. Quintana’s argument that the
Morenos waived this argument by failing to properly brief the issue, the Morenos’ reply brief
contains no reference to the trial court’s ruling on Exhibit 8.
            Texas Rule of Appellate Procedure 38.1 provides the requirements for an appellant’s
brief. Tex.R.App.P. 38.1. Subparagraph (i) provides that a brief must contain a clear and
concise argument for the contentions made, with appropriate citations to authorities and to the
record. Tex.R.App.P. 38.1(i). Failure to adequately brief an argument results in waiver. Riddle
v. Unifund CCR Partners, 298 S.W.3d 780, 783 n.1 (Tex.App.--El Paso 2009, no pet.). Because
the Morenos have failed to provide a proper argument in support of their contention that the trial
court’s evidentiary ruling in this instance was an abuse of discretion, the issue has been waived. 
Because the trial court’s ruling with regard to Exhibit 8 stands, the exhibit will not be considered
as evidence in our review of the court’s judgment. Issue Two is overruled.
            We now turn to the merits of the trial court’s summary judgment. In Issue Three, the
Morenos contend the trial court erred by granting Dr. Quintana’s no-evidence motion for
summary judgment. A no-evidence motion for summary judgment is essentially a pretrial
motion for directed verdict, and we apply the same legal sufficiency standard of review. Gray v.
Woodville Health Care Center, 225 S.W.3d 613, 616 (Tex.App.--El Paso 2006, pet. denied). A
no-evidence summary judgment movant must specify which essential elements are devoid of
evidentiary support. Aguilar v. Morales, 162 S.W3d 825, 834 (Tex.App.--El Paso 2005, pet.
denied). The burden then shifts to the non-movant to produce summary judgment evidence
raising a genuine issue of material fact regarding each challenged element. Aguilar, 162 S.W.3d
at 834. The non-movant meets this burden, thereby defeating the no-evidence motion by
producing more than a mere scintilla of evidence in support of each challenged element. See
Gray, 225 S.W.3d at 616. A “scintilla” of evidence rises to the level that enables reasonable
minds to differ in the conclusions to be drawn therefrom. See King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 750 (Tex. 2003). A no-evidence motion is properly granted when the non-movant
fails to produce proper summary judgment evidence, or the evidence produced is so weak as to
create no more than a mere surmise or suspicion. On appeal, we conduct a de novo review of the
trial court’s ruling to determine whether or not the non-movant’s evidence demonstrated that a
material fact issue exists on each of the challenged elements. See King Ranch, Inc., 118 S.W.3d
at 751. When conducting such a review, the appellate court must view the evidence in the light
most favorable to the non-movant. See Gray, 225 S.W.3d at 616. When, as here, the trial court
fails to specify which no-evidence ground served as the basis for its ruling, we must review each
ground raised in the motion, and the judgment will be affirmed if any of the theories prove
meritorious. Id. at 617.
            The essential elements of a claim for medical malpractice are: (1) a duty by the physician
to act according to a standard of care; (2) breach of that standard of care; (3) a causal connection
between the alleged breach and the injury; and (4) injury or harm to the plaintiff. See Linan v.
Rosales, 155 S.W.3d 298, 302 (Tex.App.--El Paso 2004, pet. denied). Dr. Quintana’s motion
challenged the breach and causation elements of the Morenos’ cause of action. The Morenos
responded by producing testimony by Dr. Ostrander, Dr. Quintana, and Nurse Ruddy in support
of their argument that fact issues exist on both challenged elements.
            We turn first to the breach element. Dr. Quintana asserts that there is no evidence that he
breached the standard of care because the Morenos’ primary expert witness on this issue,
Dr. Ostrander, only speculated as to a breach “if” Dr. Quintana failed to personally attend to
Ms. Moreno in the hospital. Dr. Quintana concludes that because Dr. Ostrander’s testimony was
merely speculative, it cannot serve to raise a genuine issue of material fact. Because we disagree
that the Morenos’ response was strictly limited to Dr. Ostrander’s statement as cited by
Dr. Quintana, we conclude the Morenos’ met their summary judgment burden on this issue. 
            Exhibit 4, attached to the Morenos’ response, was Dr. Ostrander’s expert affidavit. In the
affidavit, Dr. Ostrander explained that he had reviewed all the pertinent medical records and
statements, including those of Nurse James Ruddy in forming his opinions.
Nurse James Ruddy called Dr. Joseph A. Quintana at 3:30 a.m. on
February 12, 2003 to advise Dr. Quintana that he had been consulted regarding
[Ms. Moreno]. Dr. Quintana accepted the consult and gave orders at this time for
medication to lower [Ms. Moreno’s] blood pressure. The standard of care
required Nurse Ruddy to inform Dr. Quintana not only of [Ms. Moreno’s] blood
pressure, but also her heart rate, rate of respirations, oxygen saturation and history
of desaturation requiring increasing doses of supplemental oxygen. Dr. Quintana
testified that if he had been made aware of [Ms. Moreno’s] respiratory rate and
low oxygen saturation, he would have come to the hospital to see [Ms. Moreno]. 
Nurse Ruddy testified he believes he gave Dr. Quintana all the abnormal vital
signs. Vital signs include the respiratory rate.
If Nurse Ruddy failed to give Dr. Quintana the heart rate, blood pressure,
respiratory rate, and oxygen saturation, and history of desaturation requiring
increasing doses of supplemental oxygen, then his care fell below the standard of
care and contributed to the delay in providing [Ms. Moreno] with necessary
diagnostic and therapeutic care. If Dr. Quintana was aware of the heart rate, blood
pressure, respiratory rate, oxygen saturation and history of desaturation, his failure
timely to evaluate the patient and to order additional diagnostic studies, diuretics
and bi-level positive airway pressure (BiPAP) breached the standard of care.

            When we view Dr. Ostrander’s affidavit more broadly than the single statement relied on
by Dr. Quintana, a question of material fact becomes apparent. While Dr. Ostrander does
conclude that absent proper communication from Nurse Ruddy, Dr. Quintana’s actions were not
a breach of the standard of care. Dr. Ostrander also specifically noted that Nurse Ruddy believed
all necessary vitals had been given to Dr. Quintana at 3:30 a.m., making Dr. Quintana’s inaction
a breach. Dr. Ostrander’s affidavit is supplemented by Exhibit 7 to the Morenos’ response,
which contains Nurse Ruddy’s deposition. According to Nurse Ruddy’s deposition,
Dr. Quintana was advised of the patient’s vital signs when he spoke with Ruddy at 3:30 a.m. On
the other hand, Dr. Quintana’s deposition attached to the response as Exhibit 8, indicates that
based on the information given to him when he returned the hospital’s page, he did not feel it
was necessary to personally attend to Ms. Moreno.
            When we take a comprehensive view of the evidence in the Morenos’ response, it is
apparent that the resolution of the issue of Dr. Quintana’s alleged breach is dependant on the
determination of what information Dr. Quintana was, or was not, given when he spoke with
Nurse Ruddy at 3:30 a.m. Answering that question depends on the credibility attributed to Nurse
Ruddy’s recollection, versus Dr. Quintana’s. Evaluations of witness weight and credibility are
for the fact finder only, and therefore are not appropriate considerations on summary judgment. 
See Wilson, 168 S.W.3d at 821-22 (noting the deference given to the fact finder regarding
witness credibility in a legal sufficiency review). In the case before us, we are limited to viewing
the evidence in the light most favorable to the Morenos, as the non-movants. See Gray, 225
S.W.3d at 616-17. Under such a light, we conclude the evidence could lead reasonable minds to
differing conclusions regarding Dr. Quintana’s alleged breach. Accordingly, the Morenos’ have
met their summary judgment burden to raise a genuine issue of material fact on this issue, and
summary judgment was not properly granted on this ground. 
            We now turn to Dr. Quintana’s second challenged element: proximate cause. 
Dr. Quintana moved for no-evidence summary judgment by challenging the proximate cause
element solely on the basis that there was no evidence that the alleged breach was a cause-in-fact
of Ms. Moreno’s death. The motion does not contain an argument regarding the foreseeability
element of proximate cause. Specifically, Dr. Quintana argued that Dr. Ostrander’s testimony
conclusively established that Dr. Palomino’s intubation attempts were the only proximate causes
of Ms. Moreno’s death regardless of Dr. Quintana’s alleged breach.


 Again, because we believe
the evidence must be viewed more broadly, we disagree.
            Proximate cause consists of two elements; cause-in-fact and foreseeablility. Wyatt v.
Longoria, 33 S.W.3d 26, 32 (Tex.App.--El Paso 2000, no pet.). These elements cannot be
established by mere conjecture, guess, or speculation. IHS Cedars Treatment Ctr. of DeSoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798-99 (Tex. 2003). An act or omission is a cause-in-fact
of the alleged harm or injury when it was a substantial factor in bringing about the injuries, and
without it, the harm would not have occurred. Mason, 143 S.W.3d at 799. While courts have
recognized that proximate cause is generally a fact question, it may be a question of law when the
evidence is undisputed, and where only one reasonable inference may be reasonably drawn. 
Borrego v. City of El Paso, 964 S.W.2d 954, 959 (Tex.App.--El Paso 1998, pet. denied).
            According to Dr. Ostrander’s affidavit and deposition testimony, Dr. Quintana’s alleged
breach contributed to the delay in treatment which lead to the need to intubate Ms. Moreno, and
ultimately to her death. While Dr. Ostrander’s affidavit does state that Ms. Moreno died from
complications related to the intubation, he goes on to explain that assuming Dr. Quintana was
given all of Ms. Moreno’s vital signs during his conversation with Nurse Ruddy, Dr. Quintana’s
failure to personally attend to Ms. Moreno and order more aggressive treatment lead to the need
for intubation. In his deposition, Dr. Ostrander explained the connection between the need for
more aggressive treatment and Ms. Moreno’s deteriorating condition in more detail. 
Dr. Ostrander testified that Ms. Moreno was suffering from heart failure, a diagnosis that should
have been made early in the evening, and which would have lead, according to the standard of
care, to her being treated aggressively with a combination of BiPAP, diuretics, and blood
pressure control. These treatments would have stabilized and improved her condition over night,
ultimately erasing need for intubation. 
            In Dr. Quintana’s own deposition, he also testified that based on the information recorded
regarding Ms. Moreno’s condition at 2:42 a.m., there may have been a need to change the initial
approach to the case by seeing her personally, or ordering more testing. Again, based on the
medical records, Dr. Quintana noted a need for more diuretics and anti-hypertensive medication
to improve Ms. Moreno’s condition before the need for intubation arose. While Dr. Quintana’s
testimony on these points was based on his review of Ms. Moreno’s medical chart, rather than his
own recollection of the information he received at the time he was assigned to the case, viewed
in the light most favorable to the Morenos, the evidence is not legally conclusive. Because
Dr. Quintana’s testimony, combined with Dr. Ostrander’s opinions could lead reasonable minds
to different conclusions regarding the causes of Ms. Moreno’s death, the Morenos met their no-evidence summary judgment burden on this issue. See Gray, 225 S.W.3d at 616-17. Therefore,
the proximate cause element was not a proper basis for the trial court’s judgment. See Borrego,
964 S.W.2d at 959.
            Dr. Quintana’s summary judgment motion also included a section in which he argued the
Morenos had no-evidence of their ability to recover certain types of damages. Regarding the
Morenos’ claim for loss of inheritance damages specifically, the issue has been conceded by the
family. The balance of Dr. Quintana’s arguments in this section of his summary judgment
motion are based on the success of his challenges to the breach and proximate cause elements of
the Morenos’ cause of action. Given our conclusion that neither of the challenged elements
provided a proper basis for summary judgment, summary judgment was not properly granted on
the issue of recoverable damages.
            In sum, having concluded that none of Dr. Quintana’s grounds for no-evidence summary
judgment support the trial court’s judgment, Issue Three is sustained.
            In Issue Four, the Morenos contend the trial court’s summary judgment in Del Sol’s favor
was also improper. Del Sol moved for summary judgment on both traditional and no-evidence
grounds. Each section of the hybrid motion contained two grounds for summary judgment. 
Under the no-evidence standard, Del Sol challenged the proximate cause element of the
Morenos’ medical malpractice cause of action, and also alleged that the Morenos’ allegation that
Physician Assistant Roy Malphurs was negligently credentialed by the hospital was unsupported
by evidence of malice. Under the traditional summary judgment standard, Del Sol argued the
“negligent credentialing cause of action” asserted by the Morenos was not recognized in Texas. 
In the alternative, to the extent such a cause of action was a basis for liability, the hospital
claimed immunity under Texas Occupations Code Section 160.010, because there is no evidence
that the physicians assistant who attended to Ms. Moreno was given hospital privileges with
malicious intent. Because our analysis of Del Sol’s traditional grounds will dispose of the
majority of the summary judgment, we will address those grounds first. 
            As with any summary judgment ruling, a traditional summary judgment is subject to de
novo review. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). To
succeed on a tradition motion for summary judgment, the movant must establish that there is no
genuine issue of material fact so that judgment should be granted as a matter of law. Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005). Summary judgment is therefore
properly granted if the defendant disproves at least one essential element of the plaintiff’s cause
of action, or establishes all essential elements of an affirmative defense. See D. Houston, Inc. v.
Love , 92 S.W.3d 450, 454 (Tex. 2002); Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001). If the
movant is successful in establishing its right to judgment as a matter of law, the burden then
shifts to the non-movant to produce evidence raising a genuine issue of material fact. City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979). As in a review under
the no-evidence standard, the reviewing court will take as true all competent evidence favorable
to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant’s favor. See Grant, 73 S.W.3d at 215. Unlike a no-evidence motion however, a
traditional motion for summary judgment must stand or fall on its own merit, there is no right to
a traditional summary judgment by default. See City of Houston, 589 S.W.2d at 678.
            The primary issue at summary judgment regarding the Morenos’ claims against the
hospital revolves around the existence and elements of a “negligent credentialing” cause of
action. At the time the trial court granted Del Sol’s motion, the Morenos’ Fourth Amended
Original Petition was the live pleading in the case. The Morenos’ alleged the hospital was
negligent by: 
(a)Failing to properly train and supervise the nurses who cared for [Ms.
Moreno] in its intensive care unit on February 12, 2003.
 
(b) Failing to properly assess [Ms. Moreno].
 
(c)Failing to properly monitor [Ms. Moreno].
 
(d)Failing to keep [Ms. Moreno’s] physicians or their designated healthcare
provider employees timely advised of [Ms. Moreno’s] condition.
 
(e)Failing to properly evaluate Roy Malphurs, P.A. to determine his ability to
evaluate and treat a patient like [Ms. Moreno] and other similarly situated
patients while being aware that intensive care patients are at high risk of
injury and require the highest level of care;
 
(f)Allowing Roy Malphurs, P.A. to treat patients in the ICU;
 
(g)Failing to define and limit Roy Malphurs, [sic] P.A., scope of practice, and 
 
(h)Failing to timely call an anesthesiologist or pulmonolgist to intubate [Ms.
Moreno].




            The first question we must address, as argued by Del Sol, is whether “negligent
credentialing” is recognized as a cause of action in the State of Texas. The hospital relies on two
Texas Supreme Court cases for the proposition that negligent credentialing has never been
recognized as a cause of action in this state; St. Luke’s Episcopal Hosp. v. Agbors, 952 S.W.2d
503 (Tex. 1997) and Romero v. KPH Consol., Inc., 166 S.W.3d 212 (Tex. 2005). In Agbor, the
Court held that the Texas Medical Practice Act applied to a patient’s cause of action against a
hospital for negligently credentialing a physician. Agbors, 952 S.W.2d at 504. The Agbor
family sued the hospital where their son suffered permanently disabling injuries during his
delivery. Id. The Agbors alleged the hospital was negligent and grossly negligent for
credentialing the physician who delivered the baby. Id. The hospital moved for summary
judgment under former Article 4495b, §§ 1.01-6.13, arguing that the Texas Medical Practice Act
provided immunity for credentialing decisions by health care entities absent malice. Id. While
the Court did not expressly recognize “negligent credentialing” as an independent cause of
action, it did state that the Texas Medical Practice Act provided that malice was the “threshold
standard” for a cause of action against a hospital for its “credentialing activities.” Id. at 509.
            The Court revisited the issue in 2005 in Romero. In Romero, the claimant sued the
defendant hospital for “malicious credentialing” of a surgeon, whom they alleged negligently
delayed a blood transfusion during surgery. Romero, 166 S.W.3d at 214. Although the Court’s
discussion was focused on whether the jury was properly charged on the issue of the hospital’s
alleged negligent credentialing of the surgeon, in its discussion the Court explained, “[i]n Texas,
by statute, a hospital is not liable for improperly credentialing a physician through its peer review
process unless the hospital acts with malice . . . .” Id. at 214 n.1, citing Tex.Occ.Code Ann.
§ 160.010(b) & (c)(formerly Tex.Rev.Civ.Stat.Ann. art. 4495b, § 5.06(l)-(m); Act of June 1,
1987, 70th Leg., R.S., ch 596, § 18, 1987 Tex.Gen.Laws 2325, 2335). Again, while not
expressly acknowledging a cause of action for negligently credentialing, the Court noted the
difficulty a claimant faces in accessing evidence of malicious credentialing. Romero, 166
S.W.3d at 224-25.
            Although not cited by Del Sol, the Texas Supreme Court revisited the issue of negligent
credentialing again in 2004, in Garland Community Hosp. v. Rose, 156 S.W.3d 541 (Tex.
2004)(orig. proceeding). This case came to the Court on a petition for writ of mandamus
involving the medical expert report requirement in former Article 4591i. See Rose, 156 S.W.3d
at 542. In the underlying suit, the claimant sued the defendant hospital for negligently
credentialing a doctor who performed a cosmetic surgery. Id. The issue before the Court was
whether “negligent credentialing” was a healthcare liability claim subject to the medical expert
report requirements of the Texas Medical Liability and Insurance Improvement Act.


 Id. In
footnote one, the Court noted that it had never formally recognized the existence of a common-law cause of action for negligent credentialing, but concluded it would assume such a claim
existed for the purposes of the case. Id. at 542 n.1, citing Agbor, 952 S.W.2d at 508. In its
analysis of negligent credentialing as a health care liability claim, the Court discussed the process
and purposes of a hospital’s credentialing practices. The Court explained:
Furthermore, the Hospital’s credentialing activities are an inseparable part
of the medical services [the plaintiff] received. One of a hospital’s primary
functions is to provide a place in which doctors dispense health care services. The
quality of a health care provider’s medical staff is intimately connected with
patient care. A hospital’s credentialing of doctors is necessary to that core
function and is, therefore, an inseparable part of the heath care rendered to
patients.

Rose, 156 S.W.3d at 545.

            The Court also noted “a negligent credentialing claim involves a specialized standard of
care,” for which “[t]he health care industry has developed various guidelines to govern a
hospital’s credentialing process.” Rose, 156 S.W.3d at 546. Ultimately, the Court concluded
that negligent credentialing claims “involve a claimed departure from an accepted standard of
health care” and thereby, concluded such claims did fall within the definition of “health care
liability claims.” Id.
            From the combined discussions in these three cases, we conclude that although Texas
may not formally recognize an independent, common law, cause of action for negligent
credentialing, such allegations are recognized by Texas courts and by statutory authority as
actionable theories of liability in medical negligence cases. Were we to hold such claims are not
permitted by Texas law, the effect would be to eviscerate several provisions of the Texas
Occupations Code (one of which is the basis for Del Sol’s second argument), and we would be
ignoring binding precedent from the Texas Supreme Court. Negligent credentialing is a viable
theory of liability for medical negligence on the part of a health care entity, which fails to abide
by the specialized standard of care and industry guidelines, which govern the credentialing
process for medical staff. See id. at 545-46. Given this conclusion, summary judgment was not
properly granted on the basis that negligent credentialing is not recognized as a basis of liability
in Texas.
            We now turn to whether or not the negligent credentialing theory, as alleged by the
Morenos, incorporates the burden to prove malice as required by Texas Occupations Code
Section 160.010. Subparagraph (b) of Section 160.010 provides:
(b)A cause of action does not accrue against a member, agent, or employee of
a medical peer review committee or against a health care entity from any
act, statement, determination or recommendation made, or act reported,
without malice, in the course of medical peer review.

Tex.Occ.Code Ann. § 160.010(b)(Vernon 2004).

            This provision has been held to provide immunity for health care entities and physicians
absent allegations of malice in the credentialing process. See Agbor, 952 S.W.2d at 505-06, 509
(applying former version of Section 160.010(b) and (c)). Del Sol argues the immunity and
associated malice requirement also applies when the allegedly negligently credentialed individual
is a physician assistant. Because the Morenos neither alleged Physician Assistant Malphurs was
maliciously credentialed, nor produced evidence of malice in Del Sol’s credentialing procedures,
the hospital concludes it was entitled to summary judgment.
            The applicability of this provision to a physician assistant is a question of statutory
construction. Our primary objective is to determine the Legislature’s intent in enacting a
particular provision, and to give that provision its intended effect. McIntyre v. Ramirez, 109
S.W.3d 741, 745 (Tex. 2003). We must interpret the statute according to the plain meaning of
the language used, and must read the statute as a whole without giving effect to certain
provisions at the expense of others. See City of San Antonio v. City of Boerne, 111 S.W.3d 22,
25 (Tex. 2003); In re J.I.M., 281 S.W.3d 504, 507 (Tex.App.--El Paso 2008, pet. denied). Each
word, phrase, or expression must be read as if it were deliberately chosen, and we will presume
that words excluded from a provision were excluded purposefully. Gables Realty Ltd. P’ship v.
Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied).
            We turn first to the structure of the Texas Occupations Code. Section 160.010 is
contained in Subtitle B of Title 3. See Tex.Occ.Code Ann. § 160.010 (Vernon 2004). Title 3
governs “Health Professions.” Within Title 3 are several subtitles including: Subtitle A
“Provisions Applying to Health Professions Generally;” Subtitle B “Physicians;” and Subtitle C
“Other Professions Performing Medical Procedures.” See Tex.Occ.Code Ann. Title 3 “Health
Professions” (Vernon 2004). While Section 160.010 is contained in Subtitle B, specifically
applicable to physicians, Subtitle C contains Chapter 204, also known as “The Physician
Assistant Licensing Act” (“the Act”). See Tex.Occ.Code Ann. § 204.001 (Vernon 2004). 
Similar to the provisions for the governance of physicians in Subtitle B, the Act includes
provisions establishing and defining the duties of the Physician Assistant Board, provides the
licensing and eligibility requirements for individuals who seek to practice as a physician assistant
in Texas, defined the scope of a physician assistant’s practice, and requires that a physician
assistant work under the specifically defined supervision of a physician. See Tex.Occ.Code
Ann. §§ 204.051-204.207.
            The Act also includes a section imposing a duty on physician assistants and physicians, to
report to the physician assistant board any information which, in that person’s opinion, indicates
a physician assistant “poses a continuing threat to the public welfare through practice as a
physician assistant.” Tex.Occ.Code Ann. § 204.208(a)(Vernon 2004). Section 204.208(b)
specifically incorporates several provisions of Chapter 160 of the Medical Practice Act. See
Tex.Occ.Code Ann. § 204.208(b); see also Tex.Occ.Code Ann. § 151.001 (Vernon
2004)(providing that Texas Occupations Code Title 3, Subtitle B, may be cited as “the Medical
Practice Act”). Subparagraph (b) provides “[s]ections 160.002, 160.003, 160.006, 160.007(d),
160.009, 160.013, 160.014, and 160.015 apply to medical peer review relating to the practice of a
physician assistant.” Tex.Occ.Code Ann. § 204.208(b). Furthermore, subparagraph (c)
provides immunity from civil liability for any person, health care entity or a medical peer review
committee, who furnishes records, information, or assistance to the physician assistant board
without malice. Tex.Occ.Code Ann. § 204.208(c).
            Based on the Legislature’s decision not to incorporate Section 160.010 into Section
204.208(b), in addition to the limitation of the section’s immunity provision’s limitation to
liability related to the “act” of reporting a physician assistant to the board, there is no indication
from the statutory language that the Legislature intended Section 160.010 to apply to
credentialing decisions regarding a physician assistant. Furthermore, the placement of Section
160.010 in the subtitle dedicated solely to licensing and governing of physicians, also indicates a
Legislative intent for the provision to apply only to credentialing decisions involving physicians.
Accordingly, we conclude Del Sol was not entitled to immunity for its credentialing activities
related to Physician Assistant Malphurs, and the Morenos were not required to allege and
produce evidence that Mr. Malphurs was credentialed with malicious intent to avoid summary
judgment on their negligent credentialing allegations. Summary judgment was not properly
granted on Del Sol’s second “traditional” ground.
            Finally, we must address Del Sol’s no-evidence grounds.


 The hospital raised two basis
for summary judgment under the no-evidence standard. It alleged there was no evidence of
malice in its credentialing of Mr. Malphurs, and it argued that Dr. Ostrander’s opinion
 conclusively established the hospital was not a proximate cause of Ms. Moreno’s death.


 As we
have concluded, Section 160.010 does not apply in the case of a hospital’s activities in
credentialing a physician assistant, malice was not an essential element of the Morenos’ cause of
action against the hospital. Therefore, the family’s failure to produce such evidence in response
to Del Sol’s motion did not provide a basis for summary judgment. Regarding the proximate
cause element, Del Sol’s argument is identical to that made by Dr. Quintana and discussed at
length above. Dr. Ostrander’s singular statement that the failed intubation was the ultimate cause
of Ms. Moreno’s death does not prevent the remainder of the summary judgment evidence
produced by the Morenos from raising genuine issues of material fact regarding other causes,
including their allegations of negligence against the hospital. See Gray, 225 S.W.3d at 616-17. 
Again, the proximate cause element was not a proper basis for the trial court’s judgment. See
Borrego, 964 S.W.2d at 959. Having determined that none of the grounds presented in Del Sol’s
motion for summary judgment provide a proper basis for the trial court’s judgment, we sustain
Issue Four.
            Having sustained Issues One, Three, and Four, we reverse the trial court’s summary
judgment and remand the case for proceedings consistent with this opinion.  



March 10, 2010
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)